RIES v. EVENING NEWS ASSOCIATION.

Labor Relations—Direct Negotiation with Employer—Equally Divided Court.

Dismissal of action by laid-off employee who had sought to negotiate with employer directly, rather than through his union, relative to application of seniority provision in recall to employment is affirmed by a court equally divided as to reversal and remand for filing necessary pleadings, and trial on the merits and affirmance with right to file an amended complaint within 30 days and direction to permit plaintiff's collective bargaining representative to intervene or appear as *amicus*, unless otherwise joined as a party (PA 1961, No 236, § 230).

Appeal from Wayne; Kaufman (Nathan J.), J. Submitted February 5, 1963. (Calendar No. 41, Docket No. 49,754.) Decided July 17, 1963.

Assumpsit by Clifton F. Ries against the Evening News Association, a Michigan corporation, for breach of contract in failure to honor seniority provision in labor contract. Action dismissed on motion. Plaintiff appeals. Affirmed by an equally divided court (PA 1961, No 236, § 230 [assigned CL 1948, § 600.230 (Stat Ann 1962 Rev § 27A.230)]).

*Armstrong, Helm, Marshall & Schumann (Frederick H. Greiner, Jr., and George T. Roumell, Jr., of counsel), for plaintiff.*

*Butzel, Eaman, Long, Gust & Kennedy, for defendant.*

Reference for Points in Headnote
31 Am Jur, Labor §§ 102, 103.

DETHMERS, J. (*for reversal*). Defendant is owner and operator of radio and television broadcasting stations. Plaintiff was 1 of its employees. For lack of work, defendant laid off plaintiff and also other employees who did the same kind of work but who had less seniority than he. Later, defendant put the other employees, junior to plaintiff in seniority, back to work but refused to permit his return. Plaintiff claims that this was in violation of the seniority clauses of labor contracts between defendant and a union representing defendant's employees, which contracts were for the benefit of plaintiff and other employees as third-party beneficiaries.

Plaintiff filed this suit in circuit court for damages resulting from said contract violation by defendant. The court granted defendant's motion to dismiss on the grounds that plaintiff had failed to invoke the machinery existing within the industry for settlement of his dispute or to use or exhaust the grievance procedures available to him under the contract and that allowing an individual employee to follow his own grievance procedures, ignore his union and sue his employer would cause havoc both to labor and management. Reliance therefor appears to have been placed on *Cortez* v. *Ford Motor Co.*, 349 Mich 108.

Pertinent factual history is as follows: When plaintiff learned that he would not be re-employed, as those junior to him in seniority had been, he immediately had legal counsel represent him. By letter of his counsel, his grievance in this connection was presented to defendant in an effort to use voluntary methods, personally, to settle his claimed right to reinstatement to employment and back pay. A copy was served on the union, but the latter's assistance or action was never sought by plaintiff. Negotiations ensued between plaintiff and his counsel and defendant, with the knowledge and acqui-

escence of the union and with its representative present. The negotiations were broken off by defendant, which refused plaintiff's claim. Plaintiff then asked defendant for arbitration, which it refused. Plaintiff notified the union of all this, but cautioned it not to take any action on his behalf. Feeling that the door had been closed on him by defendant in the use of voluntary means of adjusting his grievance, either as in the contract provided or otherwise, plaintiff then brought this suit for damages. Thereafter he was notified that the union had sought arbitration, on which a hearing was set for a date certain, and he was invited to be present. He declined to participate, believing that doing so in an arbitration requested by the union would deprive him of his rights to act individually rather than by and through the union as his representative. The labor contract contained the following with respect to grievance procedures:

"10. In the event any complaint, dispute or question as to the interpretation, application or performance of the terms of this agreement shall arise, the union, at the request of the employee involved, may report in writing the grievance to the designated representative of the company on the report of complaint or grievance form, appendix D attached hereto, within 10 calendar days from the day the grievance first arose. In the event that such grievance is not settled within the 10 calendar days after the grievance has been submitted, then such grievance shall be immediately forwarded to the national office of the union and the employer for negotiation. In the event that the parties cannot reach agreement within 7 calendar days after the grievance is referred to the national office of the union, or during any extension thereof upon which the parties may agree in writing, the grievance will be closed unless submitted to arbitration as hereinafter provided in section 11.

"11. If the grievance is not settled by the national office of the union and the company within the time prescribed in section 10, either party may, within 30 calendar days from the expiration of such time, request arbitration by delivering a signed written notice to that effect to the other party.

"The procedure for arbitration shall be as follows:

"(a) Within 7 calendar days after delivery of the request for arbitration, the union and the employer shall attempt to select a single arbitrator acceptable to both parties.   *   *   *

"(c)   *   *   *   Such decision shall be binding upon the employer, the union and the employee or employees, involved, and each of them will promptly comply."

Section 9(a) of the national labor relations act, as amended (29 USCA, § 159[a]), reads as follows:

"Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment: *Provided,* That any individual employee or a group of employees shall have the right at any time to present grievances to their employer and to have such grievances adjusted, without the intervention of the bargaining representative, as long as the adjustment is not inconsistent with the terms of a collective-bargaining contract or agreement then in effect: *Provided further,* That the bargaining representative has been given opportunity to be present at such adjustment."

The language of Michigan's third-party beneficiary act (CL 1948, § 691.541 *et seq.* [Stat Ann 1953 Rev § 26.1231 *et seq.*]) and that of this Court's opinion in *Cortez* leave no doubt that plaintiff was a third-party beneficiary of the labor contract. Under the statute

a third-party beneficiary has the right to enforce the promises made for his benefit in the contract and to sue for damages for breach thereof. In the case of union-management labor contracts, however, the courts have placed a limitation on that right to sue, it being held, as in *Cortez,* that the employee, as third-party beneficiary, may not sue thereon without first resorting to and exhausting the grievance procedures provided in the contract. This is on the theory that the rights, having been created by contract, may only be enforced in accord with the contract's terms.

Starting from the above premise that plaintiff must first exhaust the grievance procedures provided in the contract, defendant urges, as the trial court appears to have held, that plaintiff could not do this personally or individually but only by requesting and accepting the aid and good offices of the union to process and conduct them for him with defendant. Because plaintiff undertook direct negotiations with defendant and personal presentation of his grievance to it, defendant says he did not follow the grievance procedure in the contract providing for such course of action by the union. This overlooks, of course, the language in the contract governing grievance procedures, that "the union, at the request of the employee involved, *may"* pursue the grievance procedures in the contract specified. The provision for union action is, thus, not mandatory but permissive, and then only at the request of the employee involved. It does not provide that the union *shall,* in all cases, do so, nor limit such course to union action nor exclude plaintiff therefrom. If there were a provision in the contract undertaking to do so, it would be invalid. See *Elgin, J. & E. R. Co.* v. *Burley,* 325 US 711 (65 S Ct 1282, 89 L ed 1886). On the other hand, not only does the contract

not so provide, but section 9(a) of the national labor relations act, as above quoted, expressly provides:

"That any individual employee or group of employees shall have the right at any time to present grievances to their employer and to have such grievances adjusted, without the intervention of the bargaining representative, as long as the adjustment is not inconsistent with the terms of a collective-bargaining contract or agreement then in effect: *Provided further,* That the bargaining representative has been given opportunity to be present at such adjustment."

In this case, then, plaintiff, in an effort to exhaust his contract remedies, has done that which is not prohibited by the contract, that which may reasonably be said to be permissible under it since plaintiff did not request union action as in section 10 of the contract permitted, and that which is expressly authorized by the Federal statute. This is not a case of attempting to enforce contract-created rights in a manner or under conditions other than is in accord with the terms of that contract. How, then, shall it be said that redress under this State's third-party beneficiary act is not now available to plaintiff? *Cortez* does not so hold, nor are there other decisions of this Court to that effect. In *Spencer* v. *Wall Wire Products Co.,* 357 Mich 296, for example, plaintiffs did not personally submit their grievance to the employer but left that to be done by the union.

Plaintiff says, correctly we think, that section 9(a) of the national labor relations act gives him the option of acting for himself or having the union represent him in presenting his grievance to his employer. He concedes that he may not do both and that resort to the latter, as occurred in *Spencer,* would work a waiver of his rights to the former.

Emphasizing that he has not asked the union to handle his grievance, he states that the employees did do that in cases cited by defendant, such as *Union News* v. *Hildreth* (CCA 6), 295 F2d 658, and that that distinguishing feature should be deemed persuasive of a different result in this case than in those.

Plaintiff points out that the following cases cited by defendant, namely, *Arsenault* v. *General Electric Co.*, 147 Conn 130 (157 A2d 918), *Ostrofsky* v. *United Steelworkers of America* (D Md), 171 F Supp 782, *Palnau* v. *Detroit Edison Co.* (CCA 6), 301 F2d 702, and *Black-Clawson Co., Inc.*, v. *International Machinists Lodge 355* (CCA 2), 313 F2d 179, were suits by individual employees against employers to compel arbitration, which was denied them on the basis that the right to arbitration sprang only from the contract which, in each case, provided for arbitration, not between employer and employee but only between the employer and the union, at the request of 1 of them. Plaintiff then distinguishes those cases from this in that this is not an action to compel arbitration, but a suit for damages for breach of contract. Plaintiff says that employees have always been able to enforce their individual rights under employer-union contracts in the State courts, citing the opinion of Mr. Justice Frankfurter in *Association of Westinghouse Salaried Employees* v. *Westinghouse Electric Corp.*, 348 US 437 (75 S Ct 489, 99 L ed 510), which, in turn, cites, in a footnote at page 460, State court authorities for that proposition. We think apt, at this point, the statement in Mr. Justice Black's dissenting opinion in *Smith* v. *Evening News Association*, 371 US 195, 205 (83 S Ct 267, 9 L ed 2d 246), to which the rest of the court did not hold *contra,* as follows:

"I cannot believe that congress intended by the national labor relations act either as originally

passed or as amended by section 301 to take away rights to sue which individuals have freely exercised in this country at least since the concept of due process of law became recognized as a guiding principle in our jurisprudence. And surely the labor act was not intended to relegate workers with lawsuits to the status of wards either of companies or of unions."

The extent of the applicability of the recent case of *Smith* v. *Evening News Association, supra,* may be gathered from the holding of the court as epitomized in its headnote as follows:

"A common-law action for damages for breach of a collective bargaining contract between a labor organization and an employer in an industry affecting interstate commerce may be maintained against the employer in a State court by an individual employee who is a member of such labor organization—even when the conduct constituting the breach of contract concededly is also an unfair labor practice within the jurisdiction of the national labor relations board."

Reversed and remanded for filing necessary pleadings, taking essential proceedings, and trial on the merits. Costs to plaintiff.

CARR, C. J., and KELLY and O'HARA, JJ., concurred with DETHMERS, J.

*Addendum.* Six times it is pleaded in plaintiff's declaration and 3 times it is stated in an attached exhibit that defendant's failure to recall him to work according to his seniority was in violation of the labor contracts, as follows: (1) In paragraph 10 it is alleged that defendant "in violation of said labor contract, refused to permit him to work"; (2) in paragraph 11 it is alleged that reinstatement of employees junior to plaintiff in seniority when he

had not been so reinstated was "in violation of the seniority rights of plaintiff under said labor contract"; (3) in paragraph 12 it is alleged that defendant offered to recall in order of seniority all the other laid-off employees junior to plaintiff in seniority "in further violation of the rights of plaintiff thereunder, section 26(d) of said labor contract, which reads as follows:

" '(d) Technicians laid off to reduce the staff shall, in case a vacancy later occurs, be offered the opportunity of filling such vacancy if he is reasonably available and competent to perform the work. Should such technician accept this position he shall be paid a salary commensurate with his length of service at time of layoff.' ";

(4) in paragraph 13 it is alleged "That defendant's failure to recall and reinstate plaintiff to employment * * * as the employee with the top seniority on layoff * * * was in clear violation of and a breach of said labor contract"; (5) in paragraph 14 it is alleged that it "was in clear violation of and a breach of said labor contract"; (6) in paragraph 15 it is alleged "that defendant's aforesaid actions and doings and breach of said labor contract constitute a matter of grievance on the part of plaintiff under and in accordance with the terms of said labor contracts". Attached to and made a part of the declaration is exhibit 'A', a copy of the grievance letter plaintiff filed with defendant. In it appears the following as to defendant's recall of employees junior to plaintiff in seniority: (1) "This action was a clear violation of the collective bargaining agreement", (2) "This violation of said contract was to Mr. Ries' great damage", and (3) that such damage will continue "until he is reinstated to employment, all as required and provided for in and by the collective bargaining agreement."

This case has not been tried. It was dismissed on defendant's motion, without trial. It must be noted that neither plaintiff's declaration, defendant's motion to dismiss nor plaintiff's answer thereto made the labor contract a part of such pleadings, nor were copies of it attached to any of them. A copy of that contract came into the record only because defendant's counsel offered it into evidence at the hearing on the motion to dismiss. In determining whether the declaration should be dismissed for failure to state a cause of action, its above quoted well-pleaded allegations that defendant's refusal to recall him according to his seniority rights was violative of the contract must be accepted as true. *Wright* v. *Houdaille-Hershey Corp.*, 321 Mich 21; *Zerfas* v. *Eaton County Drain Commissioner*, 326 Mich 657. This the trial court apparently did. Defendant has so accepted it and concedes it to be true, stating in its brief on this appeal:

"Appellant Ries, a laid-off employee of appellant's, claimed that appellee (The Evening News Association, owner and operator of the radio and television stations, WWJ, WWJ–FM and WWJ–TV) had failed to rehire him in line with his seniority and made a demand, through his attorney, that he be reinstated to employment, with full seniority rights and full back pay (ex. A to the declaration). *We concede that this claim constituted a grievance within the meaning of the collective agreement between appellee and the union.*"

Remand to permit plaintiff to amend his declaration in the respect noted could scarcely produce a result more emphatic and express than the allegations quoted above.

Plaintiff ought not to be deprived of his day in court, denied his right to trial on the merits and have his pleaded rights under and interpretation of the contract rejected, on review of an order granting

defendant's motion to dismiss, by an appellate court, through the process of construing the contract, which is not a part of the pleadings, contrary to the allegations of his declaration. That is the function of a trial on the merits.

SOURIS, J. (*for affirmance*). The parties to this appeal invite our pronouncement of legal principles of universal applicability in determination of the dispute they seek to assert at our bar: May an employee who has failed to present his grievance to his union for adjustment with his employer in accordance with the grievance procedures of a collective bargaining contract but who has, instead, attempted unsuccessfully to adjust his grievance personally with the employer pursuant to section 9 (a) of the national labor relations act, 29 USC, § 159 (a),[1] recover damages at law from the employer for alleged breach of seniority provisions of the contract?

The trial judge, on defendant's motion filed before answer, dismissed plaintiff's declaration on the ground that, having failed to exhaust his contractual remedies for adjustment of grievances, plaintiff was not entitled to sue at law, citing *Cortez* v. *Ford Motor Co.,* 349 Mich 108. The *Cortez Case,* however, did not involve assertion of an employee's section 9 (a) rights, nor did the plaintiffs in *Cortez* fail to request their union to process their grievances.

---

[1] "Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment: *Provided, That any individual employee or a group of employees shall have the right at any time to present grievances to their employer and to have such grievances adjusted, without the intervention of the bargaining representative, as long as the adjustment is not inconsistent with the terms of a collective-bargaining contract or agreement then in effect: Provided further, That the bargaining representative has been given opportunity to be present at such adjustment."* (Italics added.)

In *Cortez,* the plaintiffs commenced to follow the contractually prescribed grievance procedure by presenting their grievances to their union for adjustment. When their union refused to carry their grievances as far in the prescribed process as plaintiffs desired, plaintiffs did not undertake to process their own grievances personally in accordance with express provisions of their collective bargaining agreement (or even in attempted assertion of section 9 [a] rights), but chose, instead, to institute suit. This Court said that plaintiffs could not invoke the aid of the courts because their collective bargaining contract had expressly provided for an alternative nonjudicial method, including arbitration, for the resolution of such disputes. As a secondary ground for decision ("although not essential to our decision", p 126), this Court then said that, in any event, plaintiffs could not appeal to the courts, having failed to exhaust their contractual remedy.

In this case, on the other hand, Ries refrained from presenting his grievance to his union for processing and attempted, instead, to adjust his grievance personally with his employer as permitted by section 9 (a). His position is that section 9 (a) permits him to by-pass his "exclusive bargaining representative" entirely and to sue if not successful in personally adjusting his grievance with the employer.

Thus, whereas we barred the *Cortez* plaintiffs from suing their employer because their collective bargaining contract expressly provided a method for resolving such disputes without resort to the courts, the net effect of Ries' contention is that *Cortez* does not bar an employee from suing if he elects in the first instance not to request the aid of his union in processing his grievance in accordance with such contractual grievance procedure. Enough has been said to indicate the full import of what is urged upon

us today,—and to disclose the substantial limitation sought to be placed upon the primary rule applied in reaching decision in the *Cortez Case.*

Both parties to this appeal, employee and employer, press us for decision,—a decision which,—if made in favor of permitting or barring resort to the courts depending upon the unilateral choice of an aggrieved employee,—will have a profound effect upon labor-management relations heretofore sought to be stabilized by mutual agreement to submit collective bargaining contract disputes to a highly specialized process of settlement by negotiation and arbitration.[2]  Such decision should be made by an appellate court only after the most searching consideration of its consequences and, hopefully, only in a case in which all parties directly affected, including the collective bargaining representative of *all* employees, have expressed their own views to the Court.

That decision cannot, however, be made in propriety today.  Defendant's motion to dismiss was planted not alone upon the asserted bar to plaintiff's suit for having failed to exhaust his contractual remedies, but also upon the ground that plaintiff's declaration fails to state a cause of action.  It does not appear from this record whether defendant urged this pleaded ground for dismissal upon the trial court.  Inexplicably, defendant did not argue it on appeal.  Nonetheless, before this Court is called upon to decide any issues, let alone issues of such grave importance to the delicate balance between labor and management, it should first determine that an actionable cause has been declared.

Plaintiff's declaration alleges his long employment with defendant from 1941; the layoff of 6 employees junior in seniority to plaintiff in a reduc-

---

[2] See Cox, "Rights under a Labor Agreement," 69 Harv L Rev 601 (1956).

tion of staff in 1959; and his own layoff for the same reason in January of 1960, together with another employee junior in seniority to him. He further alleges subsequent discovery that of the 8 employees laid off, all except plaintiff have been recalled to employment notwithstanding that he possessed seniority superior to them. It is his claim that the collective bargaining contract[3] required defendant to recall employees laid off in reduction of staff to be recalled in the order of their seniority.

In *Cortez, supra,* at 112, this Court noted that seniority is a contractual device for "job protection unknown to the common law and founded upon no statute law in this State." If plaintiff has any right, as he asserts, to recall to employment before those junior in seniority, such right must be found in the collective bargaining contract. The contract specifically provides that layoffs for reduction of staff "shall be in inverse order of seniority", but it does not expressly state that laid-off employees shall be recalled in direct order of seniority. The only provision relating to the recall of laid-off employees is:

"Technicians laid off to reduce the staff shall, in case a vacancy later occurs, be offered the opportunity of filling such vacancy if he is reasonably available and competent to perform the work."

Whatever the reason for the contracting parties' choice of this language, it did not bind defendant to a strict seniority system of recall. In fact, the express requirements of reasonable availability and competence, particularly the latter, are at war ,with the very concept of seniority as a technique for determination of job rights. Absent contractual provision for determining reasonable availability and

---

[3] There are 2 contracts involved, the contract in effect at plaintiff's layoff having subsequently been superseded by another. In all respects pertinent to this case, however, they are identical.

competence of a laid-off employee to perform the work required, and there being in the contract a clause reserving to the employer "normal functions and rights of ownership and management", the employer retained the right to determine such availability and competence among its laid-off employees regardless of seniority.

There is no other *pleaded* basis for plaintiff's claim. It rests squarely upon the collective bargaining contract. Such contract, unless otherwise supplemented or interpreted by the parties thereto, fails to require the employer to recall laid-off employees in the order of their seniority. Plaintiff's declaration in its present form fails, therefore, to state a cause of action and its dismissal, although ordered by the trial court for another reason, must be affirmed. However, since the trial court did not base its decision upon the failure of the declaration to state a cause of action and, therefore, did not consider the propriety of permitting plaintiff to replead, it is our judgment that the order of dismissal be affirmed, but with leave granted plaintiff to file an amended complaint within 30 days following the handing down of these opinions. In the event plaintiff repleads, upon application of his collective bargaining representative to intervene as a party or to appear as *amicus*, unless otherwise joined as a party, the trial court is directed to grant such application. Costs to defendant.

BLACK, KAVANAGH, and SMITH, JJ., concurred with SOURIS, J.