SHEREMET *v.* CHRYSLER CORPORATION.

1. LABOR RELATIONS—PLEADING.

Questions must be properly framed by pleadings in order to determine questions of law affecting the whole complex of labor-management relations.

2. SAME—COLLECTIVE BARGAINING CONTRACT—SPECIFIC PERFORMANCE —SENIORITY.

Bill of complaint by laid-off employee for specific performance of collective bargaining contract providing for transfer of seniority upon transfer of an operation or department and employees therein from one plant to another failed to state a cause of action for equitable relief, where it failed to identify which contract provisions had been breached by defendant.

3. SAME—TRANSFER OF EMPLOYEE FROM ONE PLANT TO ANOTHER— EQUITY—UNIONS.

Plaintiff, an employee laid off from employment by defendant employer subsequent to a series of transfers from one plant to another, failed to state a cause of action for equitable relief against either the union, not a party to the suit, or the employer, in pleading presented for relief under a collective bargaining contract.

4. COSTS—CONSTRUCTION OF COLLECTIVE BARGAINING CONTRACT— SENIORITY.

No costs are allowed in suit by laid-off employee for specific performance by employer of collective bargaining contract with

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 31 Am Jur, Labor § 123.
[2] 31 Am Jur, Labor § 133.
    Specific performance or injunction as proper remedy for breach of collective bargaining agreement. 156 ALR 652.
[3, 4] 31 Am Jur, Labor § 107.

plaintiff's union involving construction of such agreement with respect to transfer of seniority rights.

Appeal from Wayne; Canham (James N.), J. Submitted November 8, 1963. (Calendar No. 73. Docket No. 50,215.) Decided April 6, 1964.

Bill by Wayne Sheremet against Chrysler Corporation, a foreign corporation, to compel transfer with seniority rights and for wages lost during layoff. Bill dismissed on motion. Plaintiff appeals. Affirmed.

*Dee Edwards,* for plaintiff.

*Dickinson, Wright, McKean & Cudlip (W. Gerald Warren* and *John Corbett O'Meara,* of counsel), for defendant.

*Amicus curiae:*

*John A. Fillion (Joseph L. Rauh, Jr., Stephen I. Schlossberg, John Silard,* and *James H. Heller,* of counsel), for United Automobile, Aerospace and Agricultural Implement Workers of America (AFL-CIO).

DETHMERS, J. (*concurring*). At first blush, this case appears to be a first cousin to *Ries* v. *Evening News Association,* 370 Mich 614. On closer scrutiny, the apparent consanguinity vanishes and a difference, calling for different treatment, becomes evident.

Plaintiff was one of defendant's employees. After a number of years as an hourly-rated production worker he was promoted to supervisory status. He became a foreman in defendant's plant 'A'. Thereafter, he and a portion of his department were transferred to plant 'B'. Then, due to a reduction in force, plaintiff was demoted as foreman and returned to production work in plant 'B', with full seniority rights in that plant acquired during all of his employ-

ment by defendant both as production worker and as foreman in any of its plants. Later he was retransferred to plant 'A'. Next, due to shortage of work in plant 'A', he was laid off for a number of months until he was again employed as an hourly-rated production worker at plant 'C', where he continues to be employed.

Plaintiff brought this suit, as third-party beneficiary, for specific performance of the seniority provisions of a collective-bargaining agreement in effect between defendant and a union, of which plaintiff was member, and also for payment of the amount of wages lost during his layoff. It is his contention that his seniority rights under the agreement were violated by defendant when he was retransferred to plant 'A', that if they had been observed he would have continued to be accorded seniority rights in plant 'B', as he at first was, instead of being retransferred, as was later done, to plant 'A', and that the employment situation in plant 'B' was such that then he would not have suffered the layoff.

The trial court granted defendant's motion to dismiss on the grounds that plaintiff had not exhausted his contractual remedy, and that, by becoming a member of the union, he had waived his right to proceed individually to process or press his grievance as permitted by section 9(a) of the national labor relations act, as amended (29 USCA, § 159[a]).

As distinguished from the *Ries Case,* here plaintiff expressly made the collective-bargaining agreement a part of his bill of complaint by reference. At the time of plaintiff's demotion from foreman, the collective-bargaining agreement then in effect contained provisions concerning the seniority rights of an employee who is promoted from hourly-rated production worker to foreman and then demoted therefrom and also governing such seniority rights when he is transferred from one plant to another. The defend-

ant and the union had been in disagreement as to interpretation and meaning of those provisions when applied to situations such as that of plaintiff here. The defendant, proceeding according to its interpretation, had allowed plaintiff, following his demotion, to go on as production worker with full seniority rights in plant 'B' where he then was working. This resulted in "bumping" another employee in plant 'B'. The latter complained to the union and it processed a grievance for him with defendant, contending that under its interpretation plaintiff was not entitled to the seniority in plant 'B' as accorded him by defendant, but, rather, back in plant 'A', and that, accordingly, the other employee should not have been bumped at plant 'B'.

The defendant and the union, in view of the difficulties thus presented by the conflicting interests of different employee members of the union, entered into a written "Memorandum of Understanding" covering the matter of the mentioned difference of interpretation. This occurred before plaintiff's layoff from work. The agreement provided that situations such as here presented should be governed by the provisions therein contained which, in effect, conformed with the above noted interpretation which the union had theretofore given the governing provisions in the existing collective-bargaining agreement. The parties to that agreement had foreseen the possibility of differences of interpretation between them and, accordingly, had incorporated therein a section 51, reading as follows:

"Any issue involving the interpretation and/or the application of any term of this agreement may be initiated by either party directly with the other party. Upon failure of the parties to agree with respect to the correct interpretation or application of the agreement to the issue, it may then be appealed

directly to the appeal board as provided in section (40)."

It was in accord with this interpretative memorandum of understanding that defendant retransferred plaintiff to plant 'A', with the result that the other employee, above mentioned, did not stay bumped at plant 'B'. As above stated, plaintiff afterwards suffered a layoff at plant 'A'.

The seniority rights for which plaintiff contends would be his, if at all, only as third-party beneficiary of the collective-bargaining agreement. He may enforce such rights as he has thereunder and sue for damages for breach thereof. CL 1948, § 691.541 *et seq.* (Stat Ann 1953 Rev § 26.1231 *et seq.*)*; *Ries* v. *Evening News Association, supra.* CL 1948, § 691-.543 (Stat Ann 1953 Rev § 26.1233), provides that the rights of the third-party beneficiary of a contract are subject to the express or implied conditions of the contract. Plaintiff's rights as a third-party beneficiary under the contract were subject to the provisions of its section 51, above quoted. In the exercise of the provisions of that section the defendant and the union entered into the said memorandum of understanding, interpreting the employees' seniority rights under circumstances such as here exist. That interpretation and agreement are contrary to plaintiff's position in this case. His layoff occurred after the effective date of that agreement. For that reason, if for no others, he had acquired no rights to pay for the period of his layoff before the memorandum of understanding became controlling of the situation. Under it he has no rights thereto.

If plaintiff's interpretation of the original agreement were to be conceded to be correct, he had no vested right to have the agreement remain un-

---

* Applicable statutory citation at time of pertinent dates in this case.

changed.   *Hartley* v. *Brotherhood,* 283 Mich 201;
*Holman* v. *Industrial Stamping & Manfg. Co.,* 344
Mich 235.   Collective bargaining between company
and union is not necessarily a 1-shot proposition,
ending when an agreement is reached between them.
It may be and usually is a continuing process.   This
is contemplated by the national labor relations act.
(29 USCA, § 141 *et seq.*)   They may continue to
negotiate and agree as to revision, modification,
supplementation, and interpretation of existing
agreements.   See *Union News Co.* v. *Hildreth* (CCA
6), 295 F2d 658, and authorities therein cited.   It
follows, then, not only by reason of the contract's
section 51 expressly reserving the right, but from
generally applicable law, that the memorandum of
understanding was lawfully entered into and that it
governed plaintiff's rights, even if it altered what
might have been his rights under the original agree-
ment.   In consequence, plaintiff's claims as to
seniority rights, alleged in his bill of complaint and
here asserted, are contrary to the controlling agree-
ment, without which they cannot exist at all.   His
bill of complaint, which incorporates that agreement,
failing, accordingly, to state a cause of action, was
properly dismissed.

Affirmed.

O'HARA, J., concurred with DETHMERS, J.

SOURIS, J.   The chancellor dismissed plaintiff's
bill of complaint because plaintiff failed to ex-
haust contractually specified grievance procedures.
Mr. Justice DETHMERS has written to affirm be-
cause the very contract on which plaintiff relies for
his claim of seniority itself authorizes the company-
union action which was taken in derogation of his
claim.   I would affirm dismissal, too, but not for the
reasons stated either by the chancellor or by Justice

Dethmers, each of whom goes beyond the attacked bill to determine just what it is plaintiff claims. Instead, my vote to affirm dismissal is cast simply and solely because plaintiff's bill fails to state any equitably (or legally) cognizable wrong done him by defendant for which there is any equitable (or legal) remedy.

This appeal has been briefed and argued to us on the parties' mutual assumption that but for the facts adduced from the exhibits attached to defendant's motion to dismiss, plaintiff's bill would be adequate legally to compel defendant to file its answer thereto and to entitle plaintiff to a determination on the merits. In my judgment, it is not. It seems to me that before this Court, or any court, accepts an invitation from litigants, even when extended by both sides, to address its wisdom to such profound questions of law affecting the whole complex world of labor-management relations, it should insist that the questions be framed properly by pleadings, at the very least, which arguably entitle the plaintiff to judicial relief.

Plaintiff's bill* alleges his employment by defendant as a production worker and subsequent promo-

---

\* It alleges, in its entirety:

"Plaintiff says:

"1. He is a resident of the city of Dearborn, county of Wayne, State of Michigan.

"2. Defendant, Chrysler Corporation, is a foreign corporation duly authorized to do business in Michigan, and having its principal place of business at 341 Massachusetts avenue, Highland Park, Michigan.

"3. On or about September 19, 1940, plaintiff was hired by the Chrysler Corporation as a production worker and subsequently was promoted to supervisory status.

"4. Immediately prior to, and for part of, 1957 plaintiff was employed as a foreman in department 27C at the DeSoto-Warren plant of said corporation.

"5. During the year 1957 department 27C was transferred to the Trenton engine plant of said corporation and plaintiff was transferred with said work.

"6. On or about January 9, 1961, plaintiff was demoted from his supervisory status and returned to production work in the same department with his seniority date of September 19, 1940.

tion as a supervisor, his demotion to production work with seniority dating back to his original employment, his transfer from one plant of defendant to

"7. During the time plaintiff was employed by defendant corporation, and specifically in the year 1961, there was a collective bargaining agreement in effect by and between defendant corporation and the International Union, United Automobile, Aircraft and Agricultural Implement Workers of America, AFL–CIO, a copy of which contract is in the possession of defendant corporation and made a part hereof by reference.

"8. That said contract, with reference to the matters which are the subject of this cause of action, provided as follows:

" '(68) Seniority of employees promoted to salary

" 'If an hourly rated employee is promoted to assistant foreman, foreman or to any other supervisory or salaried position, and is thereafter transferred to an hourly rated employee, he shall accumulate seniority while working in the supervisory or salaried position and when so transferred shall commence work as an hourly rated employee with the seniority ranking he had at the time of his promotion, plus the seniority accumulated while he was working in the supervisory or salaried position.' (p. 46).

" '(81) Transfer of operations between plants

" '(a) — When operations or departments are transferred from one plant to another plant of the corporation employees engaged on such operations or employed in such departments may, if they so desire, be transferred to the other plant with their full seniority.' (p. 55, 56).

"9. Defendant corporation observed the provisions of said contract from the date of plaintiff's transfer to production work on January 9, 1961, until on or about March 24, 1961.

"10. On or about March 24, 1961, plaintiff was transferred from the Trenton engine plant to the Chrysler Imperial Plant and worked there for 5 or 6 weeks.

"11. That subsequent thereto, and about May, 1961, plaintiff was laid off from the Imperial plant until on or about August 17, 1961, when he was transferred to the Chrysler Jefferson plant, where he is presently employed.

"12. Plaintiff is informed and believes, and therefore alleges the fact to be, that had defendant corporation not breached plaintiff's rights under said agreement by transferring plaintiff from the Trenton engine plant on or about March 24, 1961, plaintiff would have continued to be steadily employed all during the year 1961.

"13. During the periods while he was laid off, as aforesaid, plaintiff lost approximately $1,800 in wages, the exact amount being unknown to plaintiff but within the knowledge of defendant.

"14. Promptly upon being notified of his transfer, in March, 1961, plaintiff presented a grievance to defendant corporation in accordance with the provisions of the collective bargaining agreement.

"15. Plaintiff is informed and believes, and therefore alleges the fact to be, that as of the time of said transfer from the Trenton engine plant and to the present time, the United Automobile Workers had a conflict of interest which prevented them from representing plaintiff with reference to his grievance over said transfer in violation of his rights under the contract in a fair, impartial and nondiscriminatory manner.

another, and his subsequent 3-month layoff. The bill sets forth 2 sections of the collective-bargaining contract between defendant and its employees' exclusive bargaining representative, presumably pertinent to the rights claimed in plaintiff's bill. It alleges that upon transfer to the plant from which he subsequently was laid off, he presented a grievance to defendant in accordance with the provisions of the collective-bargaining contract, but that his union "had a conflict of interest" which precluded its fair, impartial, nondiscriminatory representation of plaintiff in processing his "grievance over said transfer in violation of his rights under the contract." Finally, the bill alleges that, although plaintiff sought adjustment of his grievance from defendant (presumably directly), defendant informed him that it had fully complied with pertinent law and that it was futile for him to persist in pressing his grievance.

Does the bill allege any facts from which it can be determined which of the contract's quoted provi-

"16. On or about October 20, 1961, plaintiff renewed his efforts to have the continuing breach of the contract adjusted by the defendant corporation, and continued said efforts until March 29, 1962, on which date defendant corporation informed plaintiff that it had fully complied with the requirements of section 9(a) of the Taft-Hartley act, as amended [29 USCA, § 159(a)], and that there was no point in continuing to further press his grievance.

"17. Plaintiff has already lost approximately $1,800 in wages as a result of his wrongful transfer to the Chrysler Jefferson plant and is informed and believes, and therefore alleges the fact to be, that he will continue to suffer damages in the future unless the company is compelled to transfer him to the Trenton engine plant in accordance with his seniority rights.

"18. The amount involved is more than $100 and plaintiff has no adequate remedy excepting in a court of equity.

"Wherefore, plaintiff prays:

"(a) That defendant be required to specifically perform the terms of said collective bargaining agreement by transferring plaintiff to its Trenton engine plant with a seniority date of September 19, 1940;

"(b) That plaintiff may be made whole for the loss of wages suffered by him due to his wrongful transfer away from the Trenton engine plant; and

"(c) That plaintiff may have such other and further relief as shall be agreeable to equity and good conscience.

WALTER SHEREMET"

sions was breached by defendant? I do not believe it does. Section 68 of the contract, quoted in paragraph 8 of the bill and set forth in the margin, is the section pursuant to which plaintiff became entitled to seniority dating back to his first employment with defendant upon his demotion from a supervisory to an hourly-rated position. He does not claim he was denied such seniority when he first became entitled to it. He acknowledges he was accorded full seniority upon his demotion. Section 81, also quoted in the bill, provides for the transfer of hourly-rated employees with their full seniority from one of defendant's plants to another whenever their operation or department is so transferred. The only such transfer of a department, which in any way affected plaintiff and which is pleaded in the bill (paragraph 5), occurred around 4 years prior to plaintiff's demotion to hourly-rated status and at a time when he was a supervisor. His transfer in March of 1961 (paragraph 10 of the bill) is not alleged to have been in connection with the transfer of an operation in which he was engaged or a department in which he was employed so that section 81 could be involved in any way. At best, plaintiff alleges that by his transfer in March of 1961 from the Trenton engine plant to the Chrysler Imperial plant, the seniority to which he was entitled proved to be inadequate to prevent his layoff whereas, had he not been so transferred, his seniority would have been adequate to keep him employed at the Trenton engine plant. What provision of the contract forbids defendant from so transferring its employees? Certainly neither of the sections of the contract quoted in the bill. What right of plaintiff, contractual or otherwise, did defendant breach? The bill of complaint, however regarded, fails to say.

It does suggest, however, that plaintiff's union failed to press his grievance (for redress of the

wrong we have found so elusive to identify) fairly, impartially and without discrimination. What this means, we dare not say excepting only that it is *not* an allegation of bad faith, arbitrary action or fraud such that judicial relief may be sought against the *union* (*Cortez* v. *Ford Motor Company,* 349 Mich 108) ; nor is it, without more (for example, see *Steele* v. *Louisville & N. R. Co.,* 323 US 192 [65 S Ct 226, 89 L ed 173], and *Humphrey* v. *Moore,* 375 US 335 [84 S Ct 363, 11 L ed 2d 370]), any basis heretofore known to the law for judicial relief against an *employer.*

The long and the short of it is that plaintiff's bill fails utterly to allege any right of plaintiff breached by defendant for redress of which plaintiff is entitled to a court's process. Affirmed. Neither party shall have costs.

KAVANAGH, C. J., and BLACK and SMITH, JJ., concurred with SOURIS, J.

KELLY, J., did not sit.

ADAMS, J., took no part in the decision of this case.