ALARCON *v.* FABRICON PRODUCTS DIVISION OF
EAGLE-PICHER COMPANY.

1. LABOR RELATIONS—COLLECTIVE BARGAINING AGREEMENT—COURT ACTION.

Aggrieved employee may seek redress in the courts for enforcement of rights under a collective bargaining agreement.

2. SAME—INTERSTATE COMMERCE—COLLECTIVE BARGAINING AGREEMENT.

Suits seeking to enforce collective bargaining agreements in industries affecting interstate commerce must be decided under Federal law.

3. SAME — JURISDICTION — INTERSTATE COMMERCE — COLLECTIVE BARGAINING AGREEMENT.

The labor management relations act of 1947 does not divest State courts of jurisdiction of suits to enforce collective bargaining agreements in industries affecting interstate commerce, but such courts must follow and apply Federal law in such suits (29 USC § 185).

4. SAME—EMPLOYEE SUITS—JURISDICTION.

Employee suits to enforce private rights under collective bargaining agreement in industry affecting commerce are rec-

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 31 Am Jur, Labor §§ 123, 128.
[2] 31 Am Jur, Labor §§ 123, 125, 156.
[3] 31 Am Jur, Labor §§ 327, 329.
State's power to enjoin violation of collective labor contract as affected by federal labor relations acts. 32 ALR2d 829.
[4] 31 Am Jur, Labor §§ 327–329.
[5, 6] 31 Am Jur, Labor § 124.
[7, 8] 31 Am Jur, Labor §§ 124, 128.
[9] 31 Am Jur, Labor §§ 123–125, 128.

ognized and provided for in labor management relations act of 1947 (29 USC § 185).

5. SAME—EMPLOYEE SUITS—EXHAUSTION OF REMEDIES.

An employee may not resort to the courts to enforce his rights under collective bargaining contract before he has exhausted whatever remedies he may have under a grievance procedure established in the contract (29 USC § 185).

6. SAME—GRIEVANCE RESOLVED—JUDICIAL RELIEF.

An employee may not obtain judicial relief for grievance under collective bargaining agreement where his grievance has been resolved by the grievance procedure provided in the agreement unless he shows that the parties to the resolution acted in bad faith (29 USC § 185).

7. SAME—GRIEVANCE UNRESOLVED—JUDICIAL RELIEF.

Employee whose remedy under grievance procedure of collective bargaining contract was exhausted, but whose grievance remained unresolved because binding arbitration was not part of procedure, *held*, to have right to seek judicial relief of grievance under Federal law (29 USC § 185).

8. SAME—GRIEVANCE—EXHAUSTION OF PROCEDURE—WITHDRAWAL OF CLAIM.

Employee's union, *held*, to have no authority, after grievance procedure under collective bargaining contract had been exhausted without resolution of grievance, to destroy employee's accrued cause of action against employer under collective bargaining contract for alleged wrongful discharge by agreeing with employer to withdraw claim (29 USC § 185).

9. SAME — COLLECTIVE BARGAINING AGREEMENT — ENFORCEMENT OF RIGHTS.

A collective bargaining contract which does not provide a method of resolving deadlocks on grievances must spell out clearly the intent of the parties to deprive individual employees of the right to have recourse to the courts for settlement of grievances, for such intent to be given effect (29 USC § 185).

Appeal from Wayne; Moynihan, Jr. (Joseph A.), J. Submitted Division 1 March 10, 1966, at Detroit. (Docket No. 574.) Decided November 9, 1966. Rehearing denied February 17, 1967. Leave to appeal denied by Supreme Court April 26, 1967. See 379 Mich 761.

Declaration in assumpsit by Diego Alarcon against Fabricon Products Division of Eagle-Picher Company, an Ohio corporation, for wrongful discharge from employment. Summary judgment for defendant. Plaintiff appeals. Reversed and remanded for trial.

*Dee Edwards,* for plaintiff.

*Beaumont, Smith & Harris* (*Dwight H. Vincent,* of counsel), for defendant.

LESINSKI, C. J.    The defendant in this case is engaged in a business affecting commerce within the meaning of the national labor relations act.[1]  Plaintiff was one of the defendant's employees whose terms and conditions of employment were governed by a collective bargaining agreement between defendant and a labor union.

In December, 1957, plaintiff was discharged for alleged negligence.  On plaintiff's behalf, the grievance procedure of the labor contract was invoked. Plaintiff's grievance was processed through the final step of the grievance procedure—a joint review by a company representative and a union representative—without resolution.

Defendant's agreement with the union provided for an open-end grievance procedure, *i.e.,* no arbitration was provided for.  In February, 1958, the union voted to strike over all pending grievances, including that of plaintiff.  Shortly after the strike vote, a number of grievances were settled, but the defendant persisted in its refusal to reinstate the plaintiff.

In March, 1960, plaintiff instituted this action against defendant under the national labor relations act, claiming his discharge was in violation of the

---

[1] 61 Stat 136 *et seq.* (29 USC § 151 *et seq.*).

collective bargaining agreement which forbade discharges except for "just cause." Defendant filed a motion for summary judgment, with affidavits supporting its principal contention that the union had agreed with the defendant that plaintiff's grievance was without merit and would be "dropped" or "washed out." According to the pretrial statement, it was defendant's position that it and the union had agreed "as part of the *quid pro quo* for the adoption of the new contract, all past grievances, which included the plaintiff's grievance, would be considered as closed."

Plaintiff filed affidavits in opposition to the defendant's motion for summary judgment. The trial judge deemed them insufficient to raise a factual issue and granted the defendant a summary judgment from which plaintiff prosecutes this appeal.

Plaintiff asks us to decide, first, that the affidavits in support of and in opposition to the motion for summary judgment disclose a factual dispute— whether the union agreed with defendant to "wash out" plaintiff's grievance—which would require a trial to resolve, and, second, that the union officials had no authority under the labor contract to "wash out" plaintiff's grievance.[2] In view of our disposition of the second question, we need not decide the first, and will assume the correctness of the trial judge's decision on that point.

Before us then is a very narrow but nonetheless important question. Absent specific language in the collective bargaining agreement, what authority does a union have to compromise or terminate an employee's grievance without his consent, after the grievance has been processed without resolution

[2] Defendant's brief in this Court addresses itself only to the first question, but we have considered the defendant's extensive brief on the second question which was filed with the trial court.

through the final step of a grievance procedure which does not terminate in binding arbitration?

The weight of authority is to the effect that a grieved employee, under a collective bargaining agreement, may seek redress in the courts. *Food Fair Stores, Inc.,* v. *Raynor* (1959), 220 Md 501 (154 A2d 814). See the cases collected in 18 ALR2d 367. The Michigan courts have given relief on employee suits where the court's jurisdiction was not challenged. See, for example, *Leon* v. *Detroit Harvester Co.* (1961), 363 Mich 366.

Suits seeking to enforce collective bargaining agreements in industries affecting commerce must be decided on the basis of Federal law. Section 301(a) of the labor management relations act of 1947,[3] not only confers jurisdiction upon the Federal courts to entertain such actions, but authorizes the Federal courts to fashion a body of Federal law for enforcement of collective bargaining agreements. *Textile Workers Union* v. *Lincoln Mills* (1957), 353 US 448 (77 S Ct 912, 1 L ed 2d 972). While section 301(a) does not divest the State courts of jurisdiction of such suits, *Charles Dowd Box Co., Inc.,* v. *Courtney* (1962), 368 US 502 (82 St Ct 519, 7 L ed 2d 483), the State courts must follow and apply Federal law.[4]  *Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of America* v. *Lucas Flour Co.* (1962), 369 US 95 (82 S Ct 571, 7 L ed 2d 593); *Humphrey* v. *Moore* (1964), 375 US 335 (84 S Ct 363, 11 L ed 2d 370).

*Smith* v. *Evening News Association* (1962), 371 US 195 (83 S Ct 267, 9 L ed 2d 246), forecloses any further argument that employee suits are not within the ambit of section 301. In deciding that a court's

---

[3] 61 Stat 156 (29 USC § 185[a]).

[4] Apparently there will be some exceptions (not pertinent here) to this rule. *International Union, UAW* v. *Hoosier Cardinal Corp.* (1966), 383 US 696 (86 S Ct 1107, 16 L ed 2d 192), applying a State statute of limitations to a suit brought under section 301.

jurisdiction over employee suits was not defeated because the employer conduct involved might also be an unfair labor practice within the concurrent jurisdiction of the national labor relations board, the Court assumed that the employee had a cause of action.

"The labor act recognizes the existence of private rights within the statutory scheme." *International Union* v. *Scofield* (1965), 382 US 205, 218 (86 S Ct 373, 15 L ed 2d 272, 281).

Of course an employee may not resort to the courts before exhausting whatever remedies he may have under a grievance procedure established in the labor contract. *Republic Steel Corp.* v. *Maddox* (1965), 379 US 650 (85 S Ct 614, 13 L ed 2d 580). And he may not, in the absence of a claim and proof of bad faith, obtain judicial relief where his grievance has been resolved by the grievance procedure. *Humphrey* v. *Moore, supra.*

In *Humphrey* v. *Moore, supra,* the grievance procedure provided for binding arbitration as the final step in the grievance procedure. We think this is a significant factor in the evolving Federal body of law on the right of employees to seek court enforcement of rights claimed under a labor contract.

Thus in sustaining the employee's right to sue under the contract, the Supreme Court noted in footnote 1 to its opinion in *Smith* v. *Evening News Association, supra,* at p 196:

"There was no grievance arbitration procedure in this contract which had to be exhausted before recourse could be had to the courts."

The Court then invited comparison between *Drake Bakeries, Inc.,* v. *Local 50, American Bakery & Confectionery Workers International, AFL-CIO* (1962), 370 US 254 (82 S Ct 1346, 8 L ed 2d 474), which stayed an employer's action under a labor contract because he had access to the arbitration provision

in the grievance procedure, and *Atkinson* v. *Sinclair
Refining Co.* (1962), 370 US 238 (82 S Ct 1318, 8
L ed 2d 462), which denied a stay of an employer's
suit where he had no access to arbitration.

The plaintiff here exhausted his remedies under
the grievance procedure and his grievance remained
unresolved because the contract did not call for
binding arbitration. Under these circumstances, we
conclude that Federal law gave the plaintiff the right
to seek judicial relief for the claimed violation of his
rights under the contract.[5]

We come then to the crucial question of what
authority the union had *after exhaustion of the griev-
ance procedure,* to bind the plaintiff by either with-
drawing or otherwise settling his claim. *Humphrey*
v. *Moore, supra,* at p 349, holds that a union has
considerable control over employee grievances
"which would only clog the grievance process." But
it doesn't necessarily follow that the union control
continues beyond the final step of the grievance pro-
cedure. Here plaintiff's legal action, brought after
termination of the grievance process, could not fur-
ther burden the grievance machinery. Whether or
not the union could "wash out" plaintiff's grievance
while it was still only a grievance being processed
under the contract,[6] when plaintiff's grievance

---

[5] Nothing said in *Cortez* v. *Ford Motor Co.* (1957), 349 Mich 108,
conflicts with our holding, even though that decision was reached
without the benefit of the United States Supreme Court decisions
we have relied upon. In *Cortez,* the Court pointed (pp 112, 113)
to "a notable reluctance on the part of the courts to assume the
role of umpire in industrial disputes, particularly *when adequate ma-
chinery exists* within the industry for such purpose." (Emphasis
supplied.) Justice SOURIS in *Ries* v. *Evening News Association* (1957),
370 Mich 614, 625, read *Cortez* as holding that employees "could not
invoke the aid of the courts because their collective bargaining con-
tract had expressly provided for an alternative nonjudicial method,
including arbitration, for the resolution of such disputes."

[6] In dictum in *Pennington* v. *Whiting Tubular Products, Inc.* (1963),
370 Mich 590, our Supreme Court read *Smith* v. *Evening News As-
sociation, supra,* as supporting the conclusion "that the action of the
union in abandoning the grievance claim was not binding on the

ripened into a cause of action which he could enforce in the courts, the union had no authority under the contract[7] to destroy the cause of action by agreeing with the company to withdraw the plaintiff's claim. Plaintiff had a clear right to institute suit after the final step of the grievance procedure failed to resolve his grievance. Had he done so, surely no court would allow the company to successfully plead, in defense of the litigation, a settlement made with the union months after the litigation was instituted.

The United States court of appeals for the sixth circuit has ruled in three cases companion to each other, that under the labor contract there involved, employees did not have a cause of action for wrongful discharge in the face of a company-union agreement that the discharges were for "just cause." *Union News* v. *Hildreth* (CA6, 1961), 295 F2d 658; *Hildreth* v. *Union News* (CA6, 1963), 315 F2d 548; *Simmons* v. *Union News* (CA6, 1965), 341 F2d 531. These cases can be distinguished from this on three grounds; first, the contractual language is significantly different; second, the union agreement to the discharges came before the grievance procedure was terminated; and third, the grievance procedure terminated in binding arbitration. (The latter two grounds do not appear to figure in the court's rationale.)

Aside from these distinctions, we do not believe the broad language in these cases correctly states

[employee] plaintiffs," even though the abandonment came before the grievance procedure was exhausted.

[7] Although plaintiff's complaint incorporated by reference the collective bargaining agreement, the complete agreement was not made a matter of record. Defendant has not called our attention to any provisions authorizing the union to do what it attempted here, defendant apparently taking the position that the authority claimed for the union was inherent in its position as exclusive bargaining representative rather than being derived from specific contractual language.

the Federal law on the subject. For example, in *Union News* v. *Hildreth, supra,* the court said that the employer's right to discharge an employee was controlled by State rather than Federal law. This is clearly wrong as we have already noted. In *Hildreth* v. *Union News, supra,* the court precluded re-examination of the correctness of its former decision by asserting that its first opinion was now the law of the case. In *Simmons* v. *Union News, supra,* the court said *stare decisis* precluded re-examination of *Union News* v. *Hildreth, supra.*

These sixth circuit cases have not been followed in other circuits. For example, in *Serra* v. *Pepsi Cola General Bottlers, Inc.* (DC Ill, 1965), 248 F Supp 684, in sustaining an employee's right to seek judicial enforcement of his contract rights, the court was able to distinguish the sixth circuit cases, but said of them in a footnote (p 687):

"Certiorari was denied [in *Simmons* v. *Union News*] (1965), 382 US 884 (86 S Ct 165, 15 L ed 2d 124), wherein Mr. Justice Black, joined by The Chief Justice, dissented. In the course of the dissent he indicated his fear that in reality the court was precluding individual employees from bringing section 301 contract actions. He referred to *Maddox,* where he had also dissented, and the sixth circuit's opinion in *Hildreth* as support for his feeling that people will believe 'that this court is now approving such a forfeiture of contractual claims of individual employees.' As we have pointed out, however, the language of *Maddox* and *Hildreth* specifically refute[s] this conclusion."

We recognize that collective bargaining agreements are *sui generis.* The courts have not solved all of the vexing legal problems concerning the rights of the parties under them. Our Supreme Court has recently divided on problems closely related to that before us in this case. *Ries* v. *Evening News Associ-*

*ation* (1963), 370 Mich 614; *Sheremet* v. *Chrysler Corp.* (1964), 372 Mich 626. The United States Supreme Court has not steered a straight course in this area as a reading of the cases cited in this opinion will readily disclose. We, therefore, should exercise great restraint and care to decide only the question before us. We do not want this opinion to be read as establishing a rule of law which could not be altered by appropriate contract language. What we do say is that where, as here, the contract fails to provide a method of resolving deadlocks on grievances, any intent of the parties to deny the grieved employee recourse to the courts after exhausting the grievance procedures, must be clearly spelled out.

The judgment below is reversed and the cause remanded for trial. Costs to the plaintiff.

T. G. KAVANAGH, J., concurred.

Although the late Judge WATTS heard oral argument on the above matter, he took no part in the decision in this case.