CARONIS v CITY OF PONTIAC

1. COURTS—JURISDICTION—LABOR RELATIONS—EMPLOYMENT RELA-
   TIONS COMMISSION—RES JUDICATA—JUDGMENT—WAGES.

   A circuit court may properly exercise jurisdiction over legal
   questions involving labor relations which do not require the
   particular expertise of the Employment Relations Commission;
   the effect of res judicata on a prior judgment concerning
   employment status on a subsequent attempt to lower wages is
   such a question.

2. JUDGMENT—RES JUDICATA—CHANGED CIRCUMSTANCES—LABOR RE-
   LATIONS—PUBLIC EMPLOYMENT RELATIONS ACT—CONFLICTS.

   A material change in circumstances will foreclose the application
   of res judicata to the relitigation of issues determined in a prior
   judgment, but where the advent of the public employment
   relations act is alleged to have changed the circumstances
   under which a prior judgment concerning employment status
   was issued, the party seeking to avoid the doctrine must show a
   true conflict between the public employment relations act and
   the issues previously litigated and relied upon.

3. LABOR RELATIONS—WAGES—MUNICIPAL EMPLOYEES—COURTS—PUB-
   LIC EMPLOYMENT RELATIONS ACT—BARGAINING UNITS.

   A trial court's finding that the lowering of an employee's wages
   amounted to a violation of a city charter employment provision
   prohibiting demotions does not conflict with the provisions of
   the public employment relations act granting to the Employ-
   ment Relations Commission the power to determine appropri-
   ate labor bargaining units.

REFERENCES FOR POINTS IN HEADNOTES

[1] No reference.
[2] 46 Am Jur 2d, Judgments §§ 443, 444.
   Res judicata as affected by newly discovered evidence after judg-
   ment. 149 ALR 1195.
[3] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
   Political Subdivisions §§ 374, 375.
[4] 5 Am Jur 2d, Arbitration and Award § 41.

4. Labor Relations—Contracts—Arbitration—Courts—Provisions of Agreement—Employee Rights.

  The doctrine that parties to a contract are required to first seek settlement of their differences through contractually agreed methods before judicial disposition will be considered is inapplicable where the claim is for a right not subject to the agreement.

Appeal from Oakland, Robert B. Webster, J. Submitted June 16, 1976, at Detroit. (Docket No. 22907.) Decided October 18, 1976. Leave to appeal denied, 399 Mich 842.

Complaint by Mary P. Caronis against the City of Pontiac and the Pontiac Police Supervisors Association to bar a reduction in plaintiff's status as a policewoman at the pay level of sergeant in contravention of the defendant's city charter, and seeking restoration of lost wages. Judgment for plaintiff. Defendant City of Pontiac appeals. Affirmed.

*Faintuck, Shwedel, Roether, Wolfram & McDonald,* for plaintiff.

*Sherwin M. Birnkrant (Tolleson, Burgess & Mead,* by *Douglas C. Dahn,* of counsel), for the City of Pontiac.

Before: V. J. Brennan, P. J., and N. J. Kaufman and R. H. Campbell,* JJ.

N. J. Kaufman, J. Defendant[1] appeals from a summary judgment granted by the Oakland County Circuit Court.

There is little dispute as to the material facts surrounding this controversy. The factual chronology appears as follows: Plaintiff Mary Caronis was

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] The use of defendant throughout this opinion refers to defendant-appellant City of Pontiac.

hired by the defendant City of Pontiac as a police-woman in 1953. Monetarily, however, she enjoyed a status equivalent to a sergeant in the male part of the department.

This situation prevailed until 1964. During that year, the city reduced plaintiff's pay rate to that of a patrolman. As a result, plaintiff initiated suit in the Oakland County Circuit Court attacking this reduction of pay as a violation of a city charter provision prohibiting demotions.[2]

In response to the issues presented before him, the Oakland County circuit judge resolved the case in favor of the plaintiff. He found that a definite attempt to demote plaintiff had occurred and that plaintiff's lost pay should be restored. The circuit judge reached this result primarily relying on his conclusion that wages were the best indicator of status. Thus, the circuit judge decided that any reduction in remuneration to plaintiff amounted to a demotion in violation of the city charter, regard-less of whether her position was labeled as a sergeant or a policewoman. No appeal was taken from this decision.

Thereafter, the judgment was followed for a number of years. However, in the present case, instituted in 1970, plaintiff alleged that the city's 1970 pay plan resulted in her being "treated to a reduction in pay in the same fashion as that adjudicated improper by this Court in 1966". This situation developed, plaintiff claimed, when the Pontiac Police Supervisors Association (hereinafter PPSA) became the collective bargaining represent-ative of all supervisory personnel in the depart-ment. Prior to this time, the Pontiac Police Offi-

---

[2] The applicable Pontiac City Charter provision, still in effect today, reads as follows:

"No member of the Police Department shall be demoted except upon formal complaint and after trial and conviction by the Board."

cers Association (hereinafter PPOA) had been the exclusive bargaining representative of both supervisory and nonsupervisory personnel in the department. Plaintiff contended that PPSA included her within their bargaining unit. Defendant city, however, contested this inclusion and argued, instead, that plaintiff remain within the PPOA. Thereupon, in accordance with the city's expressed opinion that plaintiff belonged in the PPOA, plaintiff's wages were reduced below the level of a sergeant.[3]

On June 16, 1971, the defendant filed a motion for accelerated or summary judgment. In this motion the defendant argued that the circuit court lacked jurisdiction to hear the cause as it related to a matter properly before the Michigan Employment Relations Commission. Moreover, defendant argued, even assuming, *arguendo,* that the circuit court had jurisdiction, plaintiff was precluded from bringing suit for failure to exhaust her contractual remedies.

On August 24, 1971, plaintiff also asked for summary judgment. Plaintiff asserted that there was no genuine issue as to any material fact and that the earlier decision of the circuit court was binding.

Defendant retorted to plaintiff's motion, in essence, by stating that it was the city's position that the intrusion of both the PPSA and PPOA onto the collective bargaining scene sufficiently altered the circumstances to make the earlier decision inapplicable.

---

[3] At this juncture, we think it appropriate to note that neither union has expressed interest in this lawsuit as the issues are presently framed and apparently have agreed to be bound by whatever determination the courts should make regarding plaintiff's pay rate. The PPOA expressly declined interest in the lawsuit. The PPSA agreed not to involve itself in the lawsuit if the judgment did not entail bargaining unit placement.

In early 1975 the circuit judge rendered an opinion from the bench granting plaintiff's motion for summary judgment. He ordered that the plaintiff be restored retroactively to all wages and fringe benefits to which sergeants of the Pontiac Police Department have been entitled. Lastly, he stated that the court was making no determination as to which of the bargaining units would represent the plaintiff. Defendant City of Pontiac appeals from this decision as of right.

The defendant poses as a threshold question whether the relief plaintiff sought in the circuit court is relief which can appropriately be granted by that court or which, under the carefully designed scheme of the public employment relations act (PERA), must be resolved by the Michigan Employment Relations Commission (hereinafter MERC), MCLA 423.201, *et seq.;* MSA 17.455(1), *et seq.* The answer to this question, defendant asserts, must be found by determining that the practical effect of the circuit court's determination was bargaining unit placement of plaintiff in contravention of the express authority granted to MERC, MCLA 423.213; MSA 17.455(13). For this proposition, defendant relies in particular on *Smigel v Southgate Community School District,* 388 Mich 531; 202 NW2d 305 (1972).

We must disagree with defendant's contention. The cases relied on by the defendant do not indicate that the circuit court lacks jurisdiction over all labor relations questions. They indicate that if the question is a purely legal question which does not require the particular expertise of MERC the circuit court does have jurisdiction. We note the language of Chief Justice T. M. KAVANAGH's opinion in *Smigel, supra,* 538–539, emphasizing this principle:

"We concur with Justice SWAINSON that the pure legal issues concerning construction of our statutes are not peculiarly within the scope of the expertise of the Michigan Employment Relations Commission and as such were properly before the circuit court."

With this principle in mind, the question of the circuit court's jurisdiction is easily resolved. In the instant case it was not bargaining unit placement which was at issue. As noted above, the trial court expressly withheld ruling on bargaining unit placement of the plaintiff. Instead, the primary question facing the circuit court was the res judicata effect of the earlier circuit court judgment as regards the lowering of wages. Clearly, this question of law did not require any of the expertise of MERC on labor matters. We therefore hold that the circuit court properly had jurisdiction to determine the propriety of granting plaintiff the relief she sought.

Next, defendant stresses the argument that even assuming the circuit court's jurisdiction, the trial judge failed to note the effect of PERA on the earlier judgment. Here, defendant submits, there is no doubt but that the circuit judge relied on a judgment which used the city charter as the controlling factor in making his determination. Obviously, defendant asserts, with the advent of PERA, a city charter is a controlling factor in few, if any, matters concerning an employee's employment relationship. To rule as the trial judge did, defendant tells us, ignores the edict of the Michigan Supreme Court in *Detroit Police Officers Association v City of Detroit,* 391 Mich 44; 214 NW2d 803 (1974). Defendant concludes that this case stands for the proposition that any conflict between the charter and PERA must be resolved in favor of PERA. Therefore, a judgment based principally on

a charter provision must also fall if there is a conflict.

Again, we cannot agree with the defendant. The fundamental doctrine is that a material change in circumstances will foreclose the application of res judicata to the relitigation of issues determined in the prior judgment. *Cloverlanes Bowl, Inc v Gordon,* 46 Mich App 518; 208 NW2d 598 (1973). While it is indisputable that the advent of PERA would be such a changed circumstance, obviously this would be so only if the terms or operation of the act affected the provisions of the earlier decree. Consequently, a true conflict between the issues previously litigated and relied upon in this case and PERA must be shown.

We read the earlier circuit court determination to mean that the best indicator of status is wages paid. Thus, the court found that a lowering of wages amounted to a violation of the charter provision prohibiting demotions. Further, the court concluded that the charter imposed a legal obligation on the part of the city to keep plaintiff's wages at a minimum level, no lower than that of a sergeant.

This causes no conflict with PERA. In the instant case, the circuit judge specifically stated that he was making no determination regarding the appropriate bargaining unit of the plaintiff. It is generally true, as defendant asserts in his brief, that MERC makes its decision as to appropriate bargaining unit placement based on duties performed not wages paid. This being so, we fail to see how the commission's power to decide placement is in any way impeded by the circuit court's judgment. Thus, we find no sufficient change of circumstances to alter the effect of the earlier judgment.

The last issue raised by defendant meriting discussion involves its contention that plaintiff was precluded from suit because of her failure to exhaust her contractual grievance and arbitration procedures. We are cognizant in resolving this case of the judicial disposition to require parties to first settle their differences through the contractually agreed method of determination. See *Alarcon v Fabricon Products,* 5 Mich App 25; 145 NW2d 816 (1966), *lv den,* 379 Mich 761 (1967). However, we believe the exhaustion doctrine is inapplicable to the instant case.

In *Barry v Flint Fire Department,* 44 Mich App 602, 606; 205 NW2d 627 (1973), a panel of this Court made it clear that an employee need not exhaust her remedies under a collective bargaining agreement unless she claims a right pursuant to that agreement. The grievance procedure between the unions and the city in the present case specifically recognizes this principle where it states it is only applicable where an employee believes "that any provision of this Agreement has not been applied or interpreted properly". This case involved a legal right created by an earlier valid judgment. Thus, exhaustion was irrelevant.

For the reasons stated above, we affirm. Costs to plaintiff.