LOCAL 1518, AMERICAN FEDERATION OF STATE, COUNTY
AND MUNICIPAL EMPLOYEES, AFL-CIO, MICHIGAN COUNCIL
55 v ST CLAIR COUNTY BOARD OF COMMISSIONERS

1. LABOR RELATIONS—POLICEMEN AND FIREMEN—COMPULSORY ARBI-
TRATION—PUBLIC POLICY.

> The statute requiring compulsory arbitration of labor disputes in
> public police and fire departments evinced an overriding public
> policy of favoring peaceful and expeditious resolution of labor
> disputes affecting policemen and firemen (MCLA 423.231 *et
> seq.).*

2. LABOR RELATIONS—POLICEMEN AND FIREMEN—GRIEVANCES—COM-
PULSORY ARBITRATION.

> A compulsory grievance arbitration provision in a union contract
> between deputy sheriffs and a county is within the spirit and
> intendment of the statute governing compulsory arbitration of
> labor disputes between public police and fire departments and
> their employers (MCLA 423.231 *et seq.).*

3. LABOR RELATIONS—POLICEMEN AND FIREMEN—GRIEVANCES—COM-
PULSORY ARBITRATION—ENFORCEMENT.

> An arbitration panel's decision providing for compulsory griev-
> ance arbitration of disputes between deputy sheriffs and de-
> fendant board of county commissioners concerning the interpre-
> tation and application of their new union-management agree-
> ment was entitled to be enforced in circuit court to the same
> extent as the panel's other decisional provisions regarding
> increases in salaries and fringe benefits, as well as changes in
> hours of work, overtime, vacation and holidays.

4. LABOR RELATIONS—GRIEVANCES—COMPULSORY ARBITRATION—FI-
NALITY.

> A provision in a union contract between deputy sheriffs and a
> county that the results of grievance arbitration shall be final
> and nonappealable does not oust the courts of their jurisdiction

REFERENCES FOR POINTS IN HEADNOTES
[1, 4, 5] 48 Am Jur 2d, Labor and Labor Relations § 1196.
[2, 3] 48 Am Jur 2d, Labor and Labor Relations § 1194.

and, therefore, does not violate the constitutional provision vesting judicial power in the courts (Const 1963, art 6, § 1).

5. LABOR RELATIONS—POLICEMEN AND FIREMEN—COMPULSORY ARBITRATION—MAJORITY DECISION.

A county's contention that the decision of an arbitration panel, which was written and signed only by the neutral arbitrator, was not a majority decision within the meaning of the statute requiring compulsory arbitration of labor disputes in public police and fire departments, is without factual merit where the county accepted and implemented the other provisions of the decision, including the increases in wages and fringe benefits, and where, when the county raised this challenge, the union representative indicated in a writing added to the record his agreement to the neutral arbitrator's decision (MCLA 423.240).

Appeal from St. Clair, Halford I. Streeter, J. Submitted Division 2 February 10, 1972, at Lansing. (Docket Nos. 11923, 11924.) Decided October 25, 1972.

Complaint by Local 1518, American Federation of State, County, and Municipal Employees, AFL-CIO, Michigan Council 55, against the St. Clair County Board of Commissioners for enforcement of an arbitration panel's decision in the parties' labor dispute. Enforcement ordered but enforcement of a provision for compulsory grievance arbitration denied. Plaintiff appeals. Reversed and remanded with instructions.

*Zwerdling, Miller, Klimist & Maurer,* for plaintiff.

*Howard J. Clyne,* for defendant.

Before: McGREGOR, P. J., and LEVIN and TARGONSKI,* JJ.

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

LEVIN, J. In 1969 the Legislature enacted a statute providing for compulsory arbitration of labor disputes in municipal police and fire departments.[1]

The plaintiff, Local 1518, AFSCME, represents deputy sheriffs employed by the defendant, St. Clair County Board of Commissioners. The union and the county were unable to agree on the terms of a new labor agreement to replace one expiring November 24, 1969, and the matter was submitted to compulsory arbitration under the new act.

On cross petitions for review and enforcement of the arbitration panel's decision, the circuit court entered an order enforcing the decision but denying enforcement of a provision for compulsory grievance arbitration of disputes arising between the parties concerning the interpretation and application of the new agreement.[2] We hold that the provision for compulsory grievance arbitration should also be enforced.

By requiring policemen and firemen and their public employers to submit unresolved disputes to compulsory arbitration, the Legislature evinced an overriding public policy favoring peaceful and expeditious resolution of labor disputes affecting policemen and firemen. Arbitration panels appointed under the 1969 act have the extraordinary power of writing the terms of a new contract; the panel is

[1] MCLA 423.231, *et seq.;* MSA 17.455(31), *et seq.* This act supplements 1965 PA 379, requiring all public employers to bargain collectively with the representative chosen by the employees and which defines the mandatory subjects of bargaining. MCLA 423.215; MSA 17.455(15).

[2] There are two principal types of compulsory arbitration: 1) interests arbitration and 2) grievance arbitration. " 'Interests' arbitration decides the substantive terms of a new contract, thereby resolving a bargaining impasse, whereas 'grievance' arbitration settles disputes over the interpretation of an existing contract." Comment, *Collective Bargaining for Public Employees and the Prevention of Strikes in the Public Sector,* 68 Mich L Rev 260, 279–280 (1969).

empowered to decide such issues normally left to the parties to decide as wages, hours, and conditions of employment.

In this very case the arbitration panel's decision provided for increases in salaries and fringe benefits and also contained, in addition to the disputed provision for grievance arbitration, terms changing provisions of the old agreement affecting hours of work, overtime, vacations and holidays.

It would be most incongruous if the Legislature, in providing for compulsory arbitration of such matters, traditionally the subject of mutual agreement, did not at least permit compulsory arbitration of the comparatively minor disputes bound to arise from time to time in the administration of the contract.

The act expressly provides that in formulating a new contract the arbitration panel shall take into consideration conditions of employment in the private employment sector and factors traditionally taken into consideration in the private sector,[3] and that to effectuate its purpose of providing an "expeditious, effective and binding procedure for the resolution of disputes", the provision for "compulsory arbitration, shall be liberally construed".[4]

Arbitration as the final step of a grievance procedure has been held to be a mandatory subject for collective bargaining in the private employment sector.[5] One writer estimates that perhaps as

---

[3] MCLA 423.239; MSA 17.455(39).

[4] MCLA 423.231; MSA 17.455(31).

[5] See *Ostrofsky v United Steelworkers of America,* 171 F Supp 782, 790 (D Md, 1959), *aff'd* 273 F2d 614 (CA 4, 1960) (dictum). *Cf. United Steelworkers of America v Warrior & Gulf Navigation Co,* 363 US 574; 80 S Ct 1347; 4 L Ed 2d 1409 (1960); *Hughes Tool Co v National Labor Relations Board,* 147 F2d 69, 73 (1945).

In this connection it is noteworthy that the Michigan statutory language obligating public employers to bargain collectively with their employees and stating the subjects of bargaining (MCLA

many as 95% of all union contracts negotiated in private industry contain provisions for arbitration of either grievances or of questions concerning the interpretation or application of the contract.[6]

It is also significant that courts in other states have ruled that it is not an unlawful delegation of the municipal authority to include a provision for compulsory grievance arbitration in a collective bargaining agreement between a union and a municipality.[7]

We are satisfied that the Legislature intended to empower an arbitration panel acting under the 1969 act to include among the terms of a union contract it was writing for the parties a provision as commonplace (in union contracts in the private sector) as is a provision for arbitration of grievances concerning the interpretation or application of the contract. The inclusion of such a provision is within the spirit and intendment of the act to provide a mandatory means of settling disputes between the parties.

We also conclude that the county's remaining contentions are not persuasive.

The provision in the award stating that the results of grievance arbitration shall be "final" and there shall be no appeal does not oust the courts of their jurisdiction and, thus, that provision does not violate Const 1963, art 6, § 1 vesting the judicial power in the courts.[8]

---

423.215; MSA 17.455[15]), is patterned after § 8(d) of the National Labor Relations Act, 29 USC 158(d).

[6] See Ringer, *Legality and Propriety of Agreements to Arbitrate Major and Minor Disputes in Public Employment,* 54 Cornell L Q 129 (1968).

[7] See *City of Auburn v Nash,* 34 App Div 2d 345; 312 NYS2d 700 (1970). Cf. *Tremblay v Berlin Police Union,* 108 NH 416; 237 A2d 668 (1968); *Local 1226, Rhinelander City Employees, AFSCME, v City of Rhinelander,* 35 Wis 2d 209; 151 NW2d 30 (1967).

[8] Cf. *Dearborn Fire Fighters Union Local No 412, IAFF v Dearborn,*

Lastly, the county contends that the purported decision of the arbitration panel, which was written and signed only by the neutral arbitrator, is not a majority decision within the meaning of the act.[9] When this challenge was raised, the union representative indicated, in a writing added to the record, his agreement to the decision written by the neutral arbitrator. The county has accepted and implemented the other provisions of the decision, including the increases in wages and fringe benefits. We think it apparent that this contention is without factual merit.

Reversed and remanded for the entry of an amended order consistent with this opinion. No costs, a public question.

All concurred.

---

42 Mich App 51 (1972), sustaining the constitutionality of this compulsory arbitration act against several challenges.

[9] MCLA 423.240; MSA 17.455(40).