GROSSE POINTE FARMS POLICE OFFICERS ASSOCIATION v
CHAIRMAN OF THE MICHIGAN EMPLOYMENT RELATIONS
COMMISSION

(GROSSE POINTE FARMS POLICE OFFICERS ASSOCIATION v
HOWLETT)

1. ARBITRATION AND AWARD—AGREEMENT TO ARBITRATE.

Courts favor arbitration, but arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.

2. STATUTES—POLICE-FIRE COMPULSORY ARBITRATION ACT—CONSTRUCTION.

It is the public policy of the state that the provisions of the police-fire compulsory arbitration act should be liberally construed (MCLA 423.231).

3. ARBITRATION AND AWARD—COLLECTIVE BARGAINING AGREEMENTS—GRIEVANCES—ARBITRATION CLAUSE.

A grievance is arbitrable unless it can be said with positive assurance that the arbitration clause in a contract is not susceptible of an interpretation that covers the asserted dispute; however, where there is no provision in a collective bargaining agreement for arbitration of grievances, it is inappropriate to order arbitration.

4. LABOR RELATIONS—COLLECTIVE BARGAINING AGREEMENTS—GRIEVANCES—EXHAUSTION OF REMEDIES.

An employee must at least attempt to exhaust grievance procedures established by a collective bargaining agreement before resorting to a judicial remedy.

Original action in the Court of Appeals. Submitted Division 2 March 12, 1974, at Lansing. (Docket

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Arbitration and Award §§ 11–53.

[2] 73 Am Jur 2d, Statutes §§ 153, 272, 276, 281, 307, 309.

[3, 4] 48 Am Jur 2d, Labor and Labor Relations §§ 1247, 1307, 1308, 1314.

No. 17226.) Decided May 1, 1974. Leave to appeal denied, 392 Mich —.

Complaint by the Grosse Pointe Farms Police Officers Association against the Chairman of the Michigan Employment Relations Commission, Robert C. Howlett, for mandamus to compel appointment of an arbitrator. The City of Grosse Pointe Farms intervened as a defendant. Mandamus denied.

*Gregory, Van Lopik & Higle* (by *J. Douglas Korney),* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Francis W. Edwards,* Assistant Attorney General, for defendant Robert G. Howlett.

*Dickinson, Wright, McKean & Cudlip* (by *John Corbett O'Meara* and *Lawrence G. Campbell),* for defendant City of Grosse Pointe Farms.

Before: HOLBROOK, P. J., and DANHOF and VAN VALKENBURG,* JJ.

HOLBROOK, P. J. This case is before this Court by complaint for mandamus against Robert G. Howlett, in his capacity as Chairman of the Michigan Employment Relations Commission. The Grosse Pointe Farms Police Officers Association is a voluntary unincorporated association and is the recognized exclusive bargaining representative for nonsupervisory police officers of the Grosse Pointe Farms police under MCLA 423.201, *et seq.;* MSA 17.455(1) *et seq.* Due to the interest of the City of

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

Grosse Pointe Farms in the present case, this Court permitted it to intervene on August 20, 1973.

In February 1969, plaintiff and the city executed a collective bargaining agreement setting forth terms and conditions of employment. This agreement was in effect at the time the dispute in question arose.

Section VI of the agreement set forth a three-step procedure for the resolution of "grievances arising out of the interpretation or application of the agreement". Disputes which remained thereafter unresolved were to be submitted to nonbinding fact-finding pursuant to section VII. The agreement made no provision for binding arbitration of unresolved disputes.

The specific dispute giving rise to this lawsuit arose in 1971 when three police officers were required to enroll in an off-duty training program. Attendance at this program was mandatory. The officers felt that they were entitled to compensation for time spent in the program. The officers' request for compensation was denied by the city and a grievance was filed pursuant to section VI. Debate and discussions were had and several mediation sessions were conducted by State Labor Mediator Leon Cornfield. The association did not pursue nonbinding fact-finding but rather initiated compulsory arbitration procedures under 1969 PA 312, the police-fire compulsory arbitration act. By letter, the city opined that the dispute was not arbitrable under the act. A request was made of defendant Howlett to appoint an arbitrator pursuant to § 5 of the act, MCLA 423.235; MSA 17.455(35). Defendant denied this request on the grounds that the act was intended to cover only interest disputes and not grievance disputes.

The defendant has couched the question in terms of whether individual grievances are within the purview of the police-fire compulsory act. Plaintiff and intervening defendant have set out the issue as whether the act empowers the chairman of the MERC to appoint an arbitrator to resolve a dispute arising over the interpretation of a collective bargaining agreement. For reasons which appear *infra,* we feel it unnecessary to answer the question as presented in either form.

We are not unmindful that as a general proposition courts favor arbitration. *Kaleva-Norman-Dickson School District No 6 v Kaleva-Norman-Dickson School Teachers' Assn,* 52 Mich App 433; 217 NW2d 411 (1974). We are, however, further aware that this proposition is based largely upon situations where provisions for arbitration are set out in collective bargaining agreements.[1] Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not so agreed to submit. *United Steelworkers of America v Warrior & Gulf Navigation Co,* 363 US 574, 582; 80 S Ct 1347, 1353; 4 L Ed 2d 1409, 1417 (1960); *United Steelworkers of America v American Mfg Co,* 363 US 564, 570–571; 80 S Ct 1363, 1364; 4 L Ed 2d 1432, 1433 (1960) (concurring opinion of Justice Brennan); *Atkinson v Sinclair Refining Co,* 370 US 238, 241; 82 S Ct 1318, 1320–1321; 8 L Ed 2d 462, 466 (1962); see, also, 51A CJS, Labor Relations, § 429, p 378. While this proposition has been most apparent in private labor problems and is here discussed in Federal case law, we feel it

---

[1] It has been estimated that as many as 95% of all union contracts negotiated in the private sector contain provisions for arbitration of grievances or questions of interpretation or application of the contract. *Local 1518 v St Clair Commrs, infra,* 43 Mich App at 345–346; 204 NW2d at 371; *Ringer, Legality and Propriety of Agreements to Arbitrate Major and Minor Disputes in Public Employment,* 54 Cornell L Rev 129 (1968).

appropriate to view the present case by analogy to these sources. See, for instance, *Detroit Police Officers Assn v Detroit,* 391 Mich 44; 214 NW2d 803 (1974).[2]

"Except where a compulsory arbitration is provided by statute, the first step toward the settlement of a difference by arbitration is the entry by the parties into a valid agreement to arbitrate. An agreement to arbitrate is a contract, the relation of the parties is contractual, and the rights and liabilities of the parties are controlled by the law of contracts." 5 Am Jur 2d, Arbitration & Award, § 11, p 527.

See, also, *Local 82, United Packinghouse, Food & Allied Workers v United States Cold Storage Corp,* 430 F2d 70 (CA 7, 1970); and *Monroe Sander Corp v Livingston,* 377 F2d 6 (CA 2, 1967).

"The duty to arbitrate being of contractual origin, a compulsory submission to arbitration cannot precede judicial determination that the collective bargaining agreement does in fact create such a duty. Thus, just as an employer has no obligation to arbitrate issues which it has not agreed to arbitrate, so a fortiori, it cannot be compelled to arbitrate if an arbitration clause does not bind it at all." *Wiley & Sons v Livingston,* 376 US 543, 547; 84 S Ct 909, 913; 11 L Ed 2d 898, 903 (1964).

See, generally, 24 ALR2d 752, *Matters arbitrable under arbitration provisions of collective labor contract,* §§ 2, 3, pp 755–759.

It is the public policy of this state that the provisions of the police-fire compulsory arbitration act should be construed liberally. MCLA 423.231; MSA 17.455(31). While courts and lawyers generally should be careful to avoid the use of the

[2] *See, also, MERC v Reeths-Puffer School Dist,* 391 Mich 253; 215 NW2d 672 (1974), and *Local 1518 v St Clair Commrs, infra,* 345–346; 204 NW2d 370–371, n 5.

phrase "well settled", it does appear settled that a grievance is arbitrable unless it can be said with positive assurance that the *arbitration clause* in a contract is not susceptible of an interpretation that covers the asserted dispute. *United States Steelworkers v Warrior & Gulf Navigation Co, supra; F & M Schaeffer Brewing Co v Local 49, International Union of United Brewery, Flour, Cereal, Soft Drink & Distillery Workers of America,* 420 F2d 854 (CA 2, 1970); *Local 82, United Packinghouse, Food & Allied Workers, supra.* Had there been in the collective bargaining agreement between the parties before this Court a provision for arbitration of grievances, we would have no reservations as to ordering such arbitration. However, as no such provision appears, we feel it inappropriate to so order. The plaintiff's remedy rather lies in negotiating the inclusion in the next collective bargaining agreement a provision for compulsory arbitration of grievances. Should such inclusion give rise to a dispute, this would be an interest dispute and this Court could order arbitration as to its inclusion, as was done in *Local 1518, American Federation of State, County & Municipal Employees, AFL-CIO, Michigan Council 55 v St Clair County Board of Commissioners,* 43 Mich App 342; 204 NW2d 369 (1972).

It is also settled that where a collective bargaining agreement establishes grievance procedures, the employee must at least attempt to exhaust these procedures before resorting to a judicial remedy. *Orphan v Furnco Construction Corp,* 466 F2d 795, 798 (CA 7, 1972); *Vaca v Sipes,* 386 US 171, 184; 87 S Ct 903, 914; 17 L Ed 2d 842, 854 (1967); *Republic Steel Corp v Maddox,* 379 US 650, 652; 85 S Ct 614, 616; 13 L Ed 2d 580, 583 (1965); *Alarcon v Fabricon Products Div of Eagle-Picher Co,* 5 Mich App 25; 145 NW2d 816 (1966); *Billings*

*v Levitt,* 10 Mich App 399; 159 NW2d 376 (1968). As Judge DANHOF wrote in *Barry v Flint Fire Dept,* 44 Mich App 602, 606; 205 NW2d 627, 629 (1973):

> "It is axiomatic that an employee contesting his rights under a collective bargaining contract must insofar as possible exhaust the grievance procedures set forth in that contract before turning to the courts for relief. See for example *Cortez v Ford Motor Co,* 349 Mich 108; 84 NW2d 523 (1957); *Field v Local 652 UAW AFL-CIO,* 6 Mich App 140; 148 NW2d 552 (1967). The reason for the rule is both apparent and sound. A collective bargaining contract fashions certain rights between an employer and employee and also creates a method for resolving any future disputes arising out of these rights, in short, a grievance procedure. In the event of a disagreement over these particular contractually created rights, it is only reasonable and equitable that the parties settle their differences by the mutually agreed upon method specified in the labor contract before looking to the judiciary for assistance. The language and factual context of the cases in this area coupled with the foregoing rationale of the exhaustion rule, however, patently indicate that the exhaustion requirement is applicable only when an employee alleges a violation of his rights created under the labor contract."

See, also, *Lomax v Armstrong Cork Co,* 433 F2d 1277, 1280 (CA 5, 1970); and *Leadon v Detroit Lumber Co,* 340 Mich 74; 64 NW2d 681 (1954).

While the fact-finding contemplated in the present agreement was not binding, we feel that bypassing this stage was improper. An impasse may have seemingly been reached; however, the use of the fact-finding procedure could have engendered a resolution of the dispute. As plaintiff has failed to exhaust its remedies under the contract, this present action before this Court is inappropriate.

"In light of the possible adverse effects of arbitration, it seems advisable that it be used sparingly in resolving labor disputes in public employment. Perhaps it should remain limited to employee groups such as policemen and firemen, for whom the strike is completely unacceptable. But in whatever situations it is used, arbitration cannot be fully adequate as a strike substitute. *Nor should it be viewed as the exclusive means of dispute resolution. Rather, it should be part of a comprehensive bargaining scheme in which arbitration, or preferably, the threat of arbitration, could prevent either party from having an overwhelming bargaining advantage, and could encourage the parties to reach an equitable settlement.*" Comment, *Collective Bargaining for Public Employees and the Prevention of Strikes in the Public Sector,* 68 Mich L Rev 260, 288 (1969).

In refusing to order arbitration, defendant Howlett was correct. We are not, however, to be read as acceding to his reasoning therefor. We cannot say, with assurance, that under all circumstances grievance arbitration could not be ordered under the police-fire arbitration act as not being within the contemplation of the Legislature. We merely point out that the facts of this case predispose the conclusion which we have reached. It is to be noted that the better procedure is for parties to negotiate and include provisions for arbitration of grievances in their collective bargaining agreements.[3] Further, it is always appropriate for the grievant, whether an individual or a group unit, to exhaust all remedies under the contract prior to seeking court determination.

No costs, a public question being involved.

All concurred.

---

[3] In passing on similar legislation, courts in other jurisdictions have held that the purpose is to assure the right to include arbitration provisions in labor contracts. *Rockland Professional Fire Fighters Assn v City of Rockland,* 261 A2d 418, 419 (Me, 1970); *Providence Teachers Union, Local 958, American Federation of Teachers, AFL-CIO v School Committee of the City of Providence,* 108 RI 444, 449; 276 A2d 762, 765 (1971).