LOCAL 1518, COUNCIL NO 55, AMERICAN FEDERATION OF
STATE, COUNTY & MUNICIPAL EMPLOYEES, AFL-CIO v ST
CLAIR COUNTY SHERIFF

Docket No. 60216. Argued October 4, 1978 (Calendar No. 2).—Decided
July 30, 1979.

James P. Bruin, a deputy sheriff of St. Clair County, was notified
by Sheriff Norman Meharg that he would not be reappointed to
serve during the sheriff's second term of office. Local 1518,
Council No. 55, American Federation of State, County and
Municipal Employees and Bruin brought an action against the
St. Clair County Sheriff and the St. Clair Board of County
Commissioners for damages for the termination of Bruin's
employment, for his reinstatement as a deputy sheriff, and for
injunctive relief to enforce a collective bargaining agreement.
The plaintiffs argue that the collective bargaining agreement
between the plaintiff union and the county required the sheriff
to comply with the grievance procedures in the agreement
before terminating Bruin's employment. The Michigan Sheriffs'
Association intervened as a defendant. The St. Clair Circuit
Court, William R. Beasley, J., granted judgment for the defen-
dants on the ground that the sheriff's statutory power of
appointment is absolute. The Court of Appeals, D. E. Holbrook,
P.J., and W. F. Hood, J. (Bashara, J., concurring), reversed,
holding that the collective bargaining agreement and the statu-
tory provision for mediation or arbitration take precedence
(Docket No. 26482). The intervening defendant appeals. *Held:*

The Legislature plainly intended that the provision of the
public employment relations act concerning compulsory arbi-
tration procedures for police and fire departments only provide
for arbitration of "interest" disputes where the normal process
of collective bargaining over the terms of a new contract has

REFERENCES FOR POINTS IN HEADNOTES
[1] 48A Am Jur 2d, Labor and Labor Relations § 1867.
[2] 70 Am Jur 2d, Sheriffs, Police, and Constables § 2.
[3, 6, 7] 48A Am Jur 2d, Labor and Labor Relations § 1764 *et seq.*
[5] 73 Am Jur 2d, Statutes § 254.
[8] 73 Am Jur 2d, Statutes §§ 255, 260.
[4] [No Reference]

broken down. It has clarified that intention by a recent amendment to the statute. Since the statute does not apply to individual grievances like the dispute in this case, it is not necessary to consider whether it can be reconciled with the statute which empowers the sheriff to appoint and remove deputies.

1. The Legislature did not intend that the compulsory arbitration statute should apply to individual grievances of police and fire department employees. The sophisticated provisions of the act are directed toward the resolution of major collective bargaining impasses and the prevention of strikes by police and fire department employees. They are inapposite to the resolution of individual employee grievances which may involve matters as trivial as the length of an employee's hair or the shine on his shoes. The plaintiff union apparently recognized this fact by attempting to secure a compulsory arbitration provision for "grievance" disputes as a part of the collective bargaining agreement preceding the agreement involved in this case. That would have been unnecessary if the statute itself provided for compulsory arbitration of grievance disputes. The chairman of the Michigan Employment Relations Commission has also recognized this fact by refusing to grant a request to appoint arbitrators for a grievance dispute.

2. The Court of Appeals has declared in dictum that the compulsory arbitration statute applied to grievance disputes as well as to disputes arising out of contract negotiations. That broad reading of the statute was unnecessary to decision in the case. The Court of Appeals recognized that the parties to a contract could establish their own non-statutory arbitration procedure which would take priority over the mechanism provided by the act, and that principle would have been sufficient to decide the case.

3. Moreover, the Legislature amended the compulsory arbitration statute to make it clear that it did *not* apply to grievance disputes. This amendment is to be viewed as a repudiation of the dictum of the Court of Appeals, intended to clarify rather than to change the meaning of the statute and therefore entitled to retroactive application. The purported conflict which leads to the attempt to reconcile this statute with the statute concerning the sheriff's power to remove his deputies is entirely nonexistent.

4. In this case, the contract in effect when plaintiff Bruin filed his grievance provided for binding arbitration as a final step in the grievance procedure only if the parties agreed in writing. That provision of the contract represented the negotiated agreement of the bargaining unit and the county commis-

sioners on the extent to which arbitration would be an available means of resolving individual grievances.

5. This analysis of this case is not inconsistent with the Court's previous decision concerning a collective bargaining agreement which established a grievance procedure for probation officers ending in binding arbitration. In that case a probation officer claimed the collective bargaining agreement superseded a statutory procedure for the removal of probation officers. In this case, the grievance procedure does not end in binding arbitration, and the plaintiff employee is not claiming that the collective bargaining procedure supersedes the statute, but that he has rights under the compulsory arbitration act which supersede the sheriff's statutory power of removal. No such rights arise under the compulsory arbitration act.

Reversed.

Justice Williams, joined by Justice Moody, dissented. He wrote:

1. The public employment relations act requires a public employer, such as the sheriff, to bargain collectively with his employees. The sheriff in this case participated in the bargaining process between the sheriff's department and the county commissioners in such a way that it is arguable that he is not bound by the bargaining agreement as a party to it. The act also requires a sheriff's department, as a public police department, to employ mediation and arbitration in resolving an employee's dispute. The issue ultimately is whether the sheriff's power granted in an earlier statute to revoke the appointment of a deputy at any time persists despite the provisions of the later public employment relations act.

2. The Court has consistently construed the public employment relations act as the dominant law regulating public employee labor relations. The supremacy of the provisions of the act is predicated on the Constitution and on the apparent legislative intent that the act be the governing law for public employee labor relations. The first rule in the case of conflict between two legislative enactments is to construe the two statutes to harmonize them, if possible. Unless there is a positive repugnancy between them, the more specific provision prevails over the more general.

3. The statute concerning the sheriff's power to remove deputies is sufficiently specific to prevail over the more general collective bargaining provision of the public employment relations act, because there is no positive repugnancy between the two provisions. It would be possible for the sheriff and deputy

sheriffs to bargain collectively about all of their disputes except removal and permit the sheriff to remove deputies at any time.

4. The provision of the public employment relations act concerning compulsory arbitration procedures for police and fire departments read at the time of this case that it applied in the case of an "employee's dispute" but did not specify whether it applied to "grievance" disputes or contract negotiation disputes. In the absence of more specific language it is construed to apply to both "grievance" disputes and contract negotiation disputes. Therefore, the language of the former provision required mediation and arbitration procedures for the sheriff's department grievances concerning discharge and other matters.

5. The Legislature has stated that the provisions of the act providing for compulsory arbitration of employee disputes in police and fire departments shall be liberally construed to achieve the ends of public policy set out in the statute. It has previously been held that the act permitting certain counties to have civil service systems for the sheriff's department and to regulate the transfer, reinstatement, suspension, and discharge of employees supersedes the statute concerning the sheriff's power to remove deputies. The optional civil service statute is another indication that the Legislature did not intend that a sheriff have the absolute power to remove deputies at will. There is a strong legislative intention to support the morale of employees of the sheriff's department by giving them some protection in their jobs. This intention is directly repugnant to a power of a sheriff at his pleasure to discharge deputies without notice and hearing, and without good cause. Therefore the police and fire department mediation and arbitration provision in the public employment relations act as it was at the time of this case superseded the statute concerning the removal of deputies. The decision applies to grievance disputes arising prior to the effective date of 1977 PA 303, which amended the statutory language being construed.

77 Mich App 145; 258 NW2d 168 (1977) reversed.

OPINION OF THE COURT

1. LABOR RELATIONS — POLICE AND FIRE DEPARTMENTS — PUBLIC
    EMPLOYMENT RELATIONS — BINDING ARBITRATION — INTEREST
    DISPUTES.

The Legislature plainly intended that the provision of the public employment relations act concerning compulsory arbitration procedures for police and fire departments only provide for arbitration of "interest" disputes where the normal process of collective bargaining over the terms of a new contract has

broken down; it has clarified that intention by a recent amendment of the statute (MCL 423.233; MSA 17.455[33]).

2. LABOR RELATIONS — POLICE AND FIRE DEPARTMENTS — PUBLIC EMPLOYMENT RELATIONS — BINDING ARBITRATION — GRIEVANCE DISPUTES.

Whether the provision of the public employment relations act concerning compulsory arbitration procedures for police and fire departments can be reconciled with the statute which empowers the sheriff to appoint and remove deputies need not be considered in a case concerning the removal of a deputy sheriff because the compulsory arbitration statute does not apply to individual grievances such as the dispute over such a removal (MCL 423.233; MSA 17.455[33]).

3. LABOR RELATIONS — POLICE AND FIRE DEPARTMENTS — PUBLIC EMPLOYMENT RELATIONS — BINDING ARBITRATION — GRIEVANCE DISPUTES.

The Legislature did not intend that the provision of the public employment relations act concerning compulsory arbitration procedures for police and fire departments would apply to individual grievances of police and fire department employees; the sophisticated provisions of the act are directed toward the resolution of major collective bargaining impasses and the prevention of strikes by police and fire department employees, and they are inapposite to the resolution of individual employee grievances (MCL 423.233; MSA 17.455[33]).

DISSENTING OPINION BY WILLIAMS, J.

4. LABOR RELATIONS — PUBLIC EMPLOYMENT RELATIONS ACT.

*The public employment relations act has been consistently construed as the dominant law regulating public employee labor relations (MCL 423.201 et seq.; MSA 17.455[1] et seq.).*

5. STATUTES — CONSTRUCTION — REPEAL BY IMPLICATION.

*The first rule of statutory construction is to harmonize two statutes which are in conflict, if possible; if there is a conflict, a more specific provision prevails over the more general one.*

6. SHERIFFS AND CONSTABLES — LABOR RELATIONS — PUBLIC EMPLOYMENT RELATIONS ACT — APPOINTMENT OF DEPUTIES.

*It would be possible for a sheriff and his deputies to bargain collectively under the public employment relations act about all their disputes except removal of deputies from office and to permit the sheriff to remove deputies at will; therefore there is no positive repugnancy between the collective bargaining provi-*

*sion of the public employment relations act and the more specific statute concerning the removal of sheriff's deputies which would require construing the more specific statutory provision concerning sheriff's deputies as prevailing over the more general one concerning public employees (MCL 51.70, 423.215; MSA 5.863, 17.455[15]).*

7. LABOR RELATIONS — POLICE AND FIRE DEPARTMENTS — PUBLIC EMPLOYMENT RELATIONS ACT — ARBITRATION — DISPUTES — WORDS AND PHRASES.

*The former provisions for compulsory arbitration of an "employee's dispute" for police and fire departments applied to contract negotiation disputes as well as to contract grievance disputes; therefore, the statute deals specifically with the requirement of arbitration in grievances dealing with discharge of a deputy from a sheriff's department and other matters (MCL 423.233; MSA 17.455[33]).*

8. SHERIFFS AND CONSTABLES — LABOR RELATIONS — PUBLIC EMPLOYMENT RELATIONS ACT — ARBITRATION — APPOINTMENT OF DEPUTIES.

*The former statutory provisions for compulsory arbitration for police and fire departments prevail over the statute concerning a sheriff's power to appoint and remove deputies; there is a strong legislative intention to support the morale of the employees of the sheriff's department by giving them some protection in their jobs and this intention is directly repugnant to a power of the sheriff at his pleasure to discharge deputies without notice, hearing or good cause (MCL 51.70, 423.233; MSA 5.863, 17.455[33]).*

*Zwerdling & Maurer* for plaintiffs.

*Farhat, Burns & Story, P.C.* (by *E. Michael Stafford* and *Richard C. Kraus*), for intervening defendant Michigan Sheriff's Association.

Amici Curiae:

*Hankins, Kluck & Robillard, P.C.* (by *Thomas A. Carlson*), for Fraternal Order of Police, State Lodge of Michigan Labor Council.

*Gregory, Van Lopik, Korney & Moore* for Police Officers Association of Michigan.

COLEMAN, C.J. The principal question presented is whether a sheriff's decision not to reappoint a deputy for another term of service must be submitted to binding arbitration for review.

MCL 51.70; MSA 5.863, which was first enacted in 1846[1] and revisited by the Legislature in both 1969 and 1978,[2] concerns, *inter alia,* the specific subject of the authority of sheriffs to appoint and discharge their deputies. In language which had remained virtually unchanged since its original enactment, it provided at all times relevant to this case:

"Each sheriff may appoint 1 or more deputy sheriffs at his pleasure, and may revoke such appointments at any time * * *."

MCL 423.233; MSA 17.455(33), which was enacted in 1969,[3] concerns the specific subject of the arbitration of public police and fire department labor disputes. However, it does not state whether these disputes include "grievance" as well as "interest" disputes;[4] nor does it mention any particular kinds of grievance disputes, such as those involving a discharge or failure to reappoint. At the time the dispute in this case arose, the arbitration statute stated:

"Whenever in the course of mediation of a public police or fire department employee's dispute, the dis-

---

[1] 1846 RS, ch 14, § 70.

[2] 1969 PA 183 and 1978 PA 635, § 1.

[3] 1969 PA 312.

[4] A "grievance" dispute is one arising under an existing contract, while an "interest" dispute is one arising during collective bargaining negotiations over the terms to be included in a new contract.

pute has not been resolved to the agreement of both parties within 30 days of the submission of the dispute to mediation and factfinding, or within such further additional periods to which the parties may agree, the employees or employer may initiate binding arbitration proceedings by prompt request therefor, in writing, to the other, with copy to the labor mediation board."

Our brethren contend that by enactment of this statute the Legislature implicitly intended *sub silentio* to repeal MCL 51.70; MSA 5.863 and require compulsory binding arbitration of grievance disputes, including those involving a sheriff's decision not to reappoint a deputy.

We must respectfully disagree. The Legislature plainly intended MCL 423.233; MSA 17.455(33) only to provide for arbitration of "interest" disputes where the normal process of collective bargaining over the terms of a new contract has broken down. It has clarified that intention by a recent amendment to the statute. Since the statute does not apply to individual grievances like the present dispute, it is not necessary to consider whether it can be reconciled with the statute which empowers the sheriff to appoint and remove deputies.

I

The plaintiff was first appointed to serve a term as a deputy sheriff in 1957. He was subsequently reappointed to successive terms by various sheriffs, including the defendant when first elected in 1969. At the end of 1972, however, the defendant informed him that he would not be reappointed for the coming term.

The collective bargaining agreement in effect at the time of the defendant's decision not to reappoint the plaintiff included a detailed five-step

grievance procedure.[5] Step 1 provided for discus-

_____

"ARTICLE FOUR
"GRIEVANCE PROCEDURE

*"Step 1.*

"a. Any employee having a specified grievance may take the matter up with the Sheriff or the designated representative of the Sheriff, who shall attempt to adjust the matter consistent with the terms of this Agreement.

"b. Any employee may request the Sheriff or the designated representative of the Sheriff to call one of two (2) designated Local Union representatives to handle a specified grievance with the Sheriff or the designated representative of the Sheriff. In this case, the Union representative will be notified without undue delay and without further discussion of the grievance. This procedure shall not unduly delay the operations of the Sheriff's Department.

*"Step 2.*

"a. Grievances shall be considered settled at Step 1 unless reduced to writing on appropriate forms signed by the aggrieved employee and delivered to the Office of the Sheriff within 48 hours after the meeting or adjourned meeting at Step 1. In this case, a meeting will be arranged promptly between one of the two designated Union representatives and the Sheriff or his designated representative for the purpose of attempting to settle the grievance at the department level.

*"Step 3.*

"a. Grievances shall be considered settled at Step 2 unless delivered to the Office of the Secretary of the Board of Auditors of Employer within 48 hours after the meeting or adjourned meeting at Step 2. The designated representative of the Employer shall meet with the Local Union representative not later than 48 hours following receipt of said grievance in the Office of the Secretary of the Board of Auditors, which representatives shall attempt to settle the grievance.

"b. The designated negotiation representative of the Employer shall write his disposition on all copies of the grievance form and shall return it to the Local Union representative within 48 hours following this meeting or adjourned meeting.

*"Step 4.*

"a. Grievances shall be considered settled at Step 3 unless written notice is delivered to the Office of the Secretary of the Board of Auditors within seven days after completion of Step 3.

"b. Such notice shall contain a request by the Union that a hearing be held within two weeks of the delivery of said notice for the disposition of said grievance. At such hearing both the Union and the Employer may request of any and all parties who have been involved in the grievance up to this step.

"c. At such hearing the Employer may be represented by one or more representatives and the Union may be represented by its Local Union representatives theretofore designated as Grievance Representatives and such other Union Representatives it wishes to have present.

"d. The designated negotiating representative of the Employer shall

sion of the grievance with the sheriff or the sheriff's designated representative. The grievant could, if he so desired, be represented by his local union representative. If no mutually satisfactory resolution resulted from step 1, step 2 provided for further discussions at the departmental level. Step 3 provided for discussion of the grievance with the designated representative of the county board of commissioners, and for a written disposition of the grievance by that representative within 48 hours. Step 4 provided for a hearing before the same representative, and a written opinion within 48 hours. Step 5 provided for mutual consent arbitration.

The plaintiff filed a grievance pursuant to these procedures on the day he was informed by the defendant that he would not be reappointed for the coming term. At the hearing conducted before the representative of the board of commissioners,

deliver the opinion of the Employer, relative to the Grievance, to the Union, in writing, within two days following the hearing.

"e. If additional time is deemed necessary to properly investigate matters relative to the grievance at any step outlined above, such additional time may be granted only if mutually agreed upon between the Union and the Employer.

"f. It is agreed that Saturday, Sunday and Holidays shall not be counted in computing time limits provided herein, except when such time limits are measured in weeks rather than days or hours.

"*Step 5.*

"Nothing herein shall prevent the parties from mutual consent arbitration, and if the parties agree to arbitration, it shall be mutually in writing, and the following steps shall be followed:

"(a) The parties shall attempt mutually to select an arbitrator. In the event they cannot agree upon an arbitrator within five (5) days, then an arbitrator shall be selected by the American Arbitration Association in accordance with their rules.

"(b) Any arbitrator selected shall have only the function to interpret the agreement, and shall not add to nor subtract from. The fees and approved expenses of the arbitrator will be borne equally between the parties.

"(c) There shall be no appeal from any arbitrator's decision. Each such decision shall be final and binding on the Union, and its members, the employee or employees involved, and the Employer."

however, the plaintiff refused to respond to the written charges of misconduct leveled against him.[6] The grievance was thereafter resolved against the plaintiff, and the defendant did not consent to submit the grievance to arbitration, as he had a right to do or not to do under the agreement.

The plaintiff filed the instant action in circuit court, asserting, *inter alia,* that he was entitled to compulsory arbitration of his grievance. He alleged that he had been discharged solely because he had run against the defendant as a candidate for sheriff in the last election. The defendant denied this allegation and alleged that his decision not to reappoint the plaintiff was supported by just cause. Testimony and exhibits presented at trial revealed that this included an alleged failure by the plaintiff to follow jail security procedures, resulting in the escape of three prisoners, and an alleged misuse of sick-leave time, involving the

[6] Plaintiff testified at trial:

*"Q. [by Defense Counsel]:* And to the best of your memory, you were not present in the auditor's office in February of 1973 at the time your grievance was being considered by me?

*"A. [by Plaintiff]:* Not that I recall, no.

*"Q.* I wonder if it would refresh your memory any to call to your attention the fact that you were called in by Mr. Musgrove and Mr. Smith while the grievance was being considered and you read some charges that had been prepared from the Sheriff's notes having to do with your alleged misconduct?

*"A.* I remember something to that effect, yes.

*"Q.* And you, in company with Mr. Musgrove, took a caucus or recess for the purpose of giving you an opportunity to read those allegations, isn't that true?

*"A.* Yes, that's right.

*"Q.* So that now that your memory is refreshed, you do remember that you participated at least to that extent in that phase of the disposition of the grievance, is that right?

*"A.* Yes.

*"Q.* And do you now remember that after you had read those allegations by the Sheriff, that you refrained from making any comment in opposition to the charges by the Sheriff?

*"A.* That's correct."

plaintiff's campaigning for sheriff while on extended sick leave for hypertension.

The trial judge did not rule on the merits of the factual allegations made by the parties. Instead, he ruled as a matter of law that MCL 51.70; MSA 5.863 controlled and supported the defendant's actions. He concluded:

"Appointment remains the prerogative of the sheriff. If that is going to be changed, it should be changed by the Legislature and not by judicial legislation."

The plaintiff appealed and the Court of Appeals reversed.[7] Leave to appeal was granted primarily to consider whether the Court of Appeals decision conflicted with this Court's previous decision in *Council No 23, Local 1905, AFSCME v Recorder's Court Judges,* 399 Mich 1; 248 NW2d 220 (1976).[8]

## II

We are of the opinion that the Legislature did not intend that MCL 423.233; MSA 17.455(33) would apply to individual grievance disputes. The sophisticated provisions of the police and fire department compulsory arbitration act, MCL 423.231 *et seq.;* MSA 17.455(31) *et seq.,* of which MCL 423.233; MSA 17.455(33) is a part, are directed toward the resolution of major collective bargaining impasses and the prevention of police and fire

---

[7] 77 Mich App 145; 258 NW2d 168 (1977).

[8] "On order of the Court, the application for leave to appeal is considered, and it is granted, limited to these questions: (1) can the Court of Appeals decision in this case (77 Mich App 145 [1977]) be reconciled with this Court's decision in *Council No 23 v Recorder's Court Judges,* 399 Mich 1 (1976); and (2) if the sheriff's authority under MCL 51.70; MSA 5.863 takes precedence over the collective bargaining agreement between the deputies and the county, is that authority absolute, or, are there safeguards which attach?" 402 Mich 881 (1978).

department employee strikes.[9] They are inapposite to the resolution of individual employee grievance disputes, which may involve matters as trivial as the length of an employee's hair or the shine on his or her shoes.

The plaintiff's union apparently recognized this fact. In conjunction with negotiation of the collective bargaining agreement preceding the agreement involved in the case at bar, the union initiated compulsory interest arbitration pursuant to MCL 423.233; MSA 17.455(33) in an attempt to secure a compulsory grievance arbitration provision as a part of the agreement.[10] That would have been unnecessary if MCL 423.233; MSA 17.455(33) itself already provided for compulsory arbitration of grievance disputes. In *Grosse Pointe Farms Police Officers Ass'n v Chairman of the Michigan Employment Relations Comm,* 53 Mich App 173; 218 NW2d 801 (1974), the chairman of the Michigan Employment Relations Commission also recognized this fact. He denied a plaintiff's request pursuant to the act for appointment of an arbitrator to arbitrate a grievance dispute on the ground that the act was intended to cover only interest disputes and not grievance disputes. Although asked to decide the scope of the act in the *Grosse Pointe*

[9] Sections 4 and 5 of the act provide a detailed mechanism for constituting a three-member arbitration panel whose impartial chairman is selected from a list of nominees provided by the Employment Relations Commission. MCL 423.234; MSA 17.455(34), MCL 423.235; MSA 17.455(35). Section 7a, added by 1972 PA 127, permits the chairman to "remand the dispute to the parties for further collective bargaining for a period not to exceed 3 weeks". MCL 423.237a; MSA 17.455(37a).

[10] See paragraphs 3-4 of the plaintiff's amended verified complaint. In *Local 1518, AFSCME, AFL-CIO, Michigan Council 55 v St Clair County Board of Comm'rs,* 43 Mich App 342; 204 NW2d 369 (1972), the Court of Appeals ordered enforcement of an arbitrator's decision providing for compulsory grievance arbitration as part of the prior contract. However, such a provision was not included in the negotiated contract under which this dispute arose.

*Farms* case, the Court of Appeals declined to address the question because it believed that plaintiffs had improperly bypassed a fact-finding stage provided by their collective bargaining agreement.

However, when the issue of the scope of MCL 423.233; MSA 17.455(33) reappeared in *Local 1325, Council No 55, AFSCME v McKervey,* 62 Mich App 689; 233 NW2d 836 (1975), the Court of Appeals declared that the statute applied to grievance disputes as well as to disputes arising out of contract negotiations. Our brethren, without analysis, rely upon *McKervey* and would apply it to all individual grievance disputes occurring prior to the effective date of 1977 PA 303.[11]

A closer examination of *McKervey* reveals that the Court of Appeals broad reading of MCL 423.233; MSA 17.455(33) was unnecessary to the decision. In that case, the circuit court had voided an arbitration award rendered pursuant to a procedure established in the collective bargaining agreement on the ground that the police and fire department compulsory arbitration act provided the exclusive mechanism for arbitration of police and firefighters' disputes and preempted any contractual arbitration provision. Ironically, the plaintiff bargaining unit, another local of the same AFSCME council to which Local 1518 belongs, argued on appeal that the act "makes compulsory arbitration applicable only to pre-contract negotiations, not to disputes over rights arising under the collective bargaining contract". The Court of Appeals rejected that interpretation but recognized that the parties to a contract could establish their own non-statutory arbitration procedure which

---

[11] 1977 PA 303 added the words "except a dispute concerning the interpretation or application of an existing agreement (a 'grievance' dispute)".

would take priority over the mechanism provided by the act.[12] That principle would have been sufficient to resolve the *McKervey* case.

In the case at bar, the contract in effect on December 31, 1972, the date plaintiff Bruin filed his grievance, provided for binding arbitration as a fifth and final step only if the parties mutually agreed in writing. That provision represented the negotiated agreement of the bargaining unit and the county commissioners on the extent to which arbitration would be an available means of resolving individual grievances.

Moreover, the Legislature amended MCL 423.233; MSA 17.455(33) in 1977 to make clear that it did *not* apply to grievance disputes. (See fn 11.) We view this amendment as a repudiation of the dictum of *McKervey,* intended to clarify rather than to change the meaning of the statute and therefore entitled to retroactive application. The purported conflict which leads our colleagues to attempt to reconcile this section with the deputy sheriff removal statute is entirely nonexistent.

---

[12] "We find that, while the trial court correctly applied Act 312 to contract negotiation disputes as well as to contract grievance disputes, its holding that Act 312 preempts any collective-bargaining contract provision for arbitration was erroneous.

\*   \*   \*

"A reading of the statute and relevant cases \* \* \* requires our holding that the procedure set forth in Act 312 is not exclusive and does not preempt contractual provisions for arbitration. The purpose clause of the act itself, describes the arbitration mechanism as an 'alternate \* \* \* procedure', not as the exclusive procedure. Further, § 3, by its terms, is not mandatory. It provides that, if the parties to mediation cannot agree after 30 days, 'the employees or employer *may* initiate binding arbitration proceedings'. MCL 423.233; MSA 17.455(33). (Emphasis supplied.) Surely, if the Legislature had intended Act 312 to be exclusive and mandatory, it would not have drafted it in such permissive form. Equally as important, this Court has interpreted Act 312 not only to allow parties to contract for their own nonstatutory arbitration procedure but also to give priority to the contractual procedure over the Act 312 procedure." *McKervey, supra,* 692-694.

## III

The foregoing analysis is not inconsistent with our decision in *Council No 23 v Recorder's Court Judges,* 399 Mich 1; 248 NW2d 220 (1976).

In that case a collective bargaining agreement had been entered into establishing a grievance procedure ending in binding arbitration which a probation officer claimed superseded a state statute providing a procedure for the removal of probation officers. In the instant case, the grievance procedure does not end in binding arbitration, and the employee is not claiming that the collective bargaining procedure supersedes the statute, but rather, that he has rights under another statute, the police and fire department compulsory arbitration act, which supersedes the sheriff's statutory powers of removal. We have already indicated our view that no such rights arise under that act.

## IV

The Court of Appeals erred in holding, in reliance on *McKervey,* that MCL 423.233; MSA 17.455(33) compelled binding arbitration of plaintiff Bruin's grievance.

We reverse.

KAVANAGH, LEVIN, RYAN, and FITZGERALD, JJ., concurred with COLEMAN, C.J.

WILLIAMS, J. This case considers whether the discharge of a sheriff's deputy is covered by the mediation/arbitration provisions of the public employees relations act (PERA)[1] or by the pre-existing

[1] MCL 423.233; MSA 17.455(33), which at the time provided:
"Whenever in the course of mediation of a public police or fire department employee's dispute, the dispute has not been resolved to

provisions of MCL 51.70; MSA 5.863 which permit
a sheriff to discharge a deputy "at any time".

We hold PERA controls and affirm the Court of
Appeals result.

## I. FACTS

Appellee, James Bruin, served as a deputy
sheriff of St. Clair County from January 1, 1957
through December 31, 1972. In the fall of 1972,
Deputy Bruin campaigned against appellant,
Sheriff Meharg, for the position of Sheriff and lost.
On December 31, 1972, Sheriff Meharg informed
Deputy Bruin that he would not be reappointed as
a deputy. Deputy Bruin filed a grievance challeng-
ing his discharge.

There was a collective bargaining agreement
adopted under PERA, MCL 423.215; MSA
17.455(15), covering the deputy sheriffs of St. Clair
County. The parties to the agreement were the St.
Clair County Board of Commissioners and Local
1518 of the St. Clair County Sheriff's Department
Chapter, Council No. 55, AFSCME, AFL-CIO, the
duly authorized collective bargaining agent for the
deputy sheriffs.

Sheriff Meharg testified that although he had
consulted with the commissioners and their negoti-
ator concerning various provisions, he was not
bound by the agreement because he was not a
party. Yet, Sheriff Meharg complied with the
agreement, even those provisions which he did not
think proper. Article 12 of the agreement, dis-
charge and discipline, provided "[s]hould the dis-

the agreement of both parties within 30 days of the submission of the
dispute to mediation and fact-finding, or within such further addi-
tional periods to which the parties may agree, the employees or
employer may initiate binding arbitration proceedings by prompt
request therefor, in writing, to the other, with copy to the labor
mediation board."

charged or disciplined employee consider the charge to be improper, procedures outlined in the grievance procedure provisions of the agreement may be followed by the employee". Article 4 of the agreement established a five-step grievance procedure ending in binding arbitration by mutual consent only.

Deputy Bruin and Local 1518 brought suit in the circuit court against the sheriff and the Board of Commissioners. Deputy Bruin sought reinstatement and compulsory arbitration of the grievance he filed against the sheriff challenging his discharge. The request for compulsory arbitration was premised on the mandatory mediation/arbitration provision of PERA, MCL 423.233; MSA 17.455(33).

The circuit court found that the sheriff's power of appointment created by MCL 51.70; MSA 5.863 was absolute. The Court of Appeals, 77 Mich App 145; 258 NW2d 168 (1977), reversed, holding that the collective bargaining agreement adopted under PERA and the mediation/arbitration provision of PERA, MCL 423.233; MSA 17.455(33), take precedence.

We granted leave to appeal February 23, 1978, 402 Mich 881 (1978),

"limited to these questions: (1) can the Court of Appeals decision in this case (77 Mich App 145 [1977]) be reconciled with this Court's decision in *Council No 23, Local 1905, AFSCME v Recorder's Court Judges,* 399 Mich 1 [248 NW2d 220] (1976); and (2) if the sheriff's authority under MCL 51.70; MSA 5.863 takes precedence over the collective bargaining agreement between the deputies and the county, is that authority absolute, or, are there safeguards which attach?"

## II. ISSUE

The issue in this case is whether defendant

sheriff retains the power to discharge a deputy sheriff without following PERA procedures. If he has such power it is based on MCL 51.70; MSA 5.863, which provides:

> *"Each sheriff* may appoint 1 or more deputy sheriffs at his pleasure, and *may revoke such appointments at any time."* (Emphasis added.)

The PERA impacts this case in two ways. First, the PERA requires a public employer, such as the sheriff, to bargain collectively with his employees. MCL 423.215; MSA 17.455(15). This was the basis for the collective bargaining agreement reached between the employees in the sheriff's department and the Board of Commissioners of St. Clair County. The sheriff participated in the process in such a way that it is arguable as to whether or not he is bound by this specific contract.

Second, beyond the PERA provision requiring public employers to bargain collectively with their public employees, is the PERA provision requiring mediation/arbitration to be used in public police and fire departments, MCL 423.233; MSA 17.455(33). This police/fire department mediation/arbitration provision applies to sheriff departments, because "[p]ublic police * * * departments" are defined to mean "any department of a * * * county * * * having employees engaged as policemen". MCL 423.232; MSA 17.455(32). Sheriff's deputies certainly are "engaged as policemen". The police/fire department mediation/arbitration provision read as follows:

> "Whenever in the course of mediation of a public police or fire department employee's dispute, the dispute has not been resolved to the agreement of both

parties within 30 days of the submission of the dispute to mediation and fact-finding, or within such further additional periods to which the parties may agree, the employees or employer may initiate binding arbitration proceedings by prompt request therefor, in writing, to the other, with copy to the labor mediation board." MCL 423.233; MSA 17.455(33).

Ultimately, the issue is whether the sheriff's power to revoke the appointment of deputies "at any time" granted by the prior MCL 51.70; MSA 5.863 persists despite the provisions of the later PERA impacting the sheriff's office as a public employer and as a public police department by MCL 423.215; MSA 17.455(15) and MCL 423.233; MSA 17.455(33).

### III. Discussion of Case Law

The case law does not leave us on a completely uncharted sea. Perhaps the strongest statement in favor of the dominance of the PERA is found in *Rockwell v Crestwood School Dist Board of Education,* 393 Mich 616; 227 NW2d 736 (1975). In *Crestwood,* this Court said:

"This *Court has consistently construed the PERA as the dominant law regulating public employee labor relations* [citing *Detroit Police Officers Association v Detroit,* 391 Mich 44; 214 NW2d 803 (1974); *Regents of the University of Michigan v Employment Relations Commission,* 389 Mich 96; 204 NW2d 218 (1973); and *Wayne County Civil Service Commission v Board of Supervisors,* 384 Mich 363; 184 NW2d 201 (1971)]." (Emphasis added.) 393 Mich 616, 629.

We followed that statement up by saying:

"[T]he supremacy of the provisions of the PERA is

predicated on the Constitution (Const 1963, art 4, § 48) and the apparent legislative intent that the PERA be the governing law for public employee labor relations." 393 Mich 616, 630.

In *Crestwood,* the majority of this Court held that since the case related to striking teachers, the PERA provision, which provided that striking public employees are entitled to a hearing only after discipline, prevailed over the teachers' tenure act provision, which provided that no teacher on tenure may be discharged until after notice and hearing. 393 Mich 616, 624-625. In other words, a specific provision prevailed over a general one.

On the other hand, in *Council No 23, Local 1905, AFSCME v Recorder's Court Judges,* 399 Mich 1; 248 NW2d 220 (1976), this Court held that the general collective bargaining provisions of the PERA, MCL 423.215; MSA 17.455(15), did not prevail over the very specific probate officer removal statute providing for full due process, including among other things a hearing before the whole Recorder's Court. The majority in that case consisted of two opinions. Justice LINDEMER's opinion, concurred in by Justices COLEMAN and FITZ-GERALD, punctuated this point as follows:

" 'In case of conflict between 2 such legislative enactments, the special statute or code must prevail.' " 399 Mich 1, 6.

This opinion also stressed that the PERA arbitration could intrude on the judicial function. 399 Mich 1, 6-7.

Justice WILLIAMS' opinion, however, said the first rule was to harmonize the two statutes, if possible, and found that there was no "positive repugnancy" between the PERA's collective bar-

gaining provision and the probation officer removal statute. 399 Mich 1, 12.

## IV. APPLICATION OF LAW TO INSTANT CASE

Turning to the instant case, we have the specific deputy sheriff removal statute confronted by two sections of PERA, the general collective bargaining section and the specific mediation/arbitration section for public police and fire departments. Our first special question in the limited grant of leave to appeal was whether the Court of Appeals decision upholding the PERA can be reconciled with the *Recorder's Court Judges* case upholding the probation officer removal statute against PERA's collective bargaining section. While the deputy sheriff removal statute is neither as detailed nor as specific as the probation officer removal statute, it is sufficiently specific to prevail against the same general collective bargaining provision of PERA, because there is no positive repugnancy between these. It would be possible for the sheriff and deputy sheriffs to bargain collectively about all their affairs except removal and permit the sheriff to remove deputies at any time. That is the lesson of *Recorder's Court Judges*.

This leaves us with whether the police/fire department mediation/arbitration section is or is not positively repugnant to the deputy sheriff removal statute.

MCL 423.233; MSA 17.455(33) through statutory definition deals specifically with sheriff department employee disputes. As of the time of this case, the statute did not specify whether both "grievance" and "interest" disputes were involved, or only one or the other.[2] It simply read "employee's dispute".

_____
[2] 1977 PA 303 amended the previous language by adding after

We do note that in *Local 1325, Council No 55, AFSCME v McKervey,* 62 Mich App 689; 233 NW2d 836 (1975), the Court of Appeals held this section to apply to both "grievance" and "interest" disputes between a sheriff and his deputies. We concur. As a consequence, the language of MCL 423.233; MSA 17.455(33) deals specifically with the requirement for mediation/arbitration in sheriff department grievances dealing with discharge and other matters.

This may not be as specific as the PERA discipline procedure for striking public employees in *Crestwood, supra,* on the one hand, but, on the other hand, the deputy sheriff removal procedure is not as specific nor does it provide the due process procedures of the probation officer removal statute in *Recorder's Court Judges, supra.*

In other words, the argument for repugnance or nonrepugnance is not as simple and clear in this case as in our two leading cases above described. As a consequence, we are warranted to see whether there are any corollary indications of whether the Legislature intended a repeal by implication. There are two items that appear to at least suggest the direction of the Legislature's intentions. One goes to the importance assigned to the PERA police/fire department mediation/arbitration and the other to the importance assigned to the deputy sheriff removal act.

Item 1. Section 1 of the PERA police/fire department mediation/arbitration act (and we must consider the whole statute) states a definite public policy of the Legislature as follows:

"It is the public policy of this state that in public

---

"employee's dispute", the words: "except a dispute concerning the interpretation or application of an existing agreement (a 'grievance' dispute)".

police and fire departments, where the right of employees to strike is by law prohibited, it is requisite to the high morale of such employees and the efficient operation of such departments to afford an alternate, expeditious, effective and binding procedure for the resolution of disputes, and to that end the *provisions of this act, providing for compulsory arbitration, shall be liberally construed.* " (Emphasis added.) MCL 423.231; MSA 17.455(31).

Item 2. In *Locke v Macomb County,* 387 Mich 634; 199 NW2d 166 (1972), a unanimous Court held that MCL 51.351 *et seq.;* MSA 5.1191(101) *et seq.,* an act to provide optional civil service for sheriff's departments in certain counties and "to regulate the transfer, reinstatement, suspension and discharge" did supersede the deputy sheriff's removal statute, MCL 51.70; MSA 5.863. While this is not the PERA but a different statute, it does indicate that the Legislature does not completely hold with the idea of removal of deputy sheriffs at will.

Viewing the contrasting intentions of the Legislature with respect to the PERA police/fire department mediation/arbitration provision and the sheriff deputy removal statute as a whole, as well as the specific provision of the two statutes, we believe there is a strong legislative intention to support the morale of sheriff's department employees by giving them some protection in their jobs and this intention is directly repugnant to the idea that sheriffs can discharge deputies at pleasure without notice and hearing and without good cause.

## V. Conclusion

We therefore conclude (1) that MCL 423.233; MSA 17.455(33), the police/fire department media-

tion/arbitration statute as of the time of the instant case superseded *pro tanto* MCL 51.70; MSA 5.863, the deputy sheriff appointment and removal statute, (2) that *Council No 23, Local 1905, AFSCME v Recorder's Court Judges,* 399 Mich 1; 248 NW2d 220 (1976), and the decision in the Court of Appeals and in this Court can be reconciled, and (3) that since we have decided the PERA takes precedence, it is not necessary to determine the second question in the limited grant predicated on MCL 51.70; MSA 5.863 taking precedence. It is noted that this decision applies to grievance disputes occurring prior to the effective date of 1977 PA 303 which amends the language herein interpreted.

We affirm the Court of Appeals result.

BLAIR MOODY, JR., J., concurred with WILLIAMS, J.